UNITED STATES of America, Appellee,

v.

Tony WHITE, Appellant.

No. 90–2862.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1991.

Decided July 14, 1992.

Alan W. Cohen, St. Louis, Mo., argued (Robert A. Cox, on the brief), for appellant.

Michael W. Reap, St. Louis, Mo., argued, for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

Tony White appeals his conviction for possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), and possession of a firearm during the commission of a drug trafficking offense, 18 U.S.C. § 924(c)(1). White argues that he is entitled to a new trial because the prosecutor improperly referred to his Jamaican nationality during closing argument, and that the government's proof he possessed a small amount of cocaine when arrested was insufficient to convict him of possession with intent to distribute. We affirm.

I.

White's conviction followed a highly confrontational trial. White testified that the police beat him and then planted the cocaine and the firearm he was charged with possessing. The police testified that White was carrying the drugs and gun, lied about the beating, and suffered minor injuries because he resisted arrest. To place the issues raised on appeal in context, we will briefly summarize the evidence presented by the prosecution and defense.

*The Government's Case.*

According to St. Louis police officer Thomas Malecek, the incident began when a 1979 Cadillac ran a stop sign. Officer Daniel Cole, driving a squad car in which Malecek and a third officer were riding, witnessed the violation and turned on the car's flashing lights. The Cadillac, driven by White, did not pull over. With the squad car now in close pursuit, White put his left hand out the driver's window and sprinkled white powder from a clear plastic baggie onto the road. He turned right at the next intersection, dropped another baggie onto the road, and then threw a third baggie and a revolver out the passenger window.

White finally stopped his car after several blocks and fled. Officer Malecek gave chase, tackled White, and tackled him again when he broke free. White's head hit the pavement during both tackles. He was arrested and searched. A fourth baggie containing what was later determined to be 5.21 grams of cocaine was found in his pocket. Other officers then took White to the hospital, where he was released following treatment for a broken nose and a head cut that required six stitches.

Meanwhile, Officer Malecek retraced the chase route in search of the items White had discarded. Malecek found a .38 caliber revolver lying in roadside grass about six inches from the pavement. He found one plastic baggie still containing white powder. He found the spot where White sprinkled powder out the window, scraped up what he could off the wet pavement with three-by-five-inch index cards, and put the scrapings in a baggie from his squad car. He never found the third baggie he saw White throw from the moving car.

A police chemist subsequently determined that the powder in the three baggies totaled 7.54 grams of cocaine of varying purity. The government introduced agent testimony that this quantity of cocaine was worth $900–$1,100 in the St. Louis market, would make 75–80 "lines" or doses of cocaine, and was for distribution purposes. In addition, the prosecution introduced numerous Western Union wire transfer forms totalling more than $2,000 and signed by White during a year when he earned about $11,000.

*The Defense Case.*

White testified that he was on his way home at the time of the arrest and pulled over as soon as he noticed the squad car's flashing lights. Before pulling over, the only thing he threw from his car was garbage from a White Castle meal. After he pulled over, Officer Cole exited the squad car, came to White's car window, and questioned him about the traffic violation. Cole then exclaimed, "We got us a Jamaican man," hit White repeatedly in the face, and then pulled White from the car and continued beating him. The arresting officers then planted the gun and drugs.

The defense noted that the gun had no scrapes, dents, or other damage consistent with having been thrown from a moving car. The gun was twice inscribed with Malecek's police ID number, rather than once as department policy prescribes, a fact that Malecek could not explain. White contended that the gun was a "throw down," a weapon already in the possession of the police that was used to frame him.

White also showed the jury that there was no dirt or other road debris in the cocaine Malecek allegedly scraped off the road. White and members of his family testified that they had reenacted Malecek's version of the incident; they opined that someone sitting in the passenger seat of a car traveling close behind White's Cadillac could not see White's shoulder and arm when he reached out the driver's side window. In addition, the baking soda they sprinkled from White's moving car scattered and was uncollectible, except for some that blew back into the car. (Malecek testified that police had found no cocaine powder in the car or on White's clothing.)

The defense also introduced a bloody eyeglass lens allegedly found on the floor of White's car the morning after his arrest and photos of his car's interior showing blood-colored stains on the driver's sun visor. However, this evidence, intended to corroborate White's description of the beating, was rather badly discredited.

The jury convicted White on both counts, and the district court[1] sentenced him to seventy-eight months in prison. A major portion of this sentence is attributable to the firearm count, which carries a mandatory five-year consecutive sentence.

## II.

During the trial, the jury learned through defense testimony that White emigrated from Jamaica as a teenager and was not a U.S. citizen. Near the end of the prosecutor's rebuttal closing argument, he remarked that White is not a citizen. White's principal contention on appeal is that this was a comment on his Jamaican nationality that denied him a fair trial, like the "racially inflammatory" assertions that Jamaicans were taking over the Washington, D.C. crack trade in *United States v. Doe*, 903 F.2d 16, 24 (D.C.Cir.1990).

A close review of the trial record reveals that this issue was not properly preserved for appeal. The prosecutor made the remark while attempting to rebut White's argument that the police had beaten him and then planted the drugs and gun:

MR. REAP [the prosecutor]: ... You [the jury] decide whether society has been wronged in this case and he has committed a crime, or whether he has been wronged, and by your verdict that is how you do it. If he wants to sue the city police for pulling him down, let him. If he wants to file an Internal Affairs report, let him. Those are his rights, *even though he is not even a citizen at this point.* That is how beautiful this country is.

MR. COX [defense counsel]: Objection, Your Honor.

THE COURT: Approach the bench,

(Out of hearing of jury:)

MR. COX: I object to the comment about his citizenship; that's absolutely improper.

MR. REAP: I'm saying he's given his rights, even though he isn't one.

THE COURT: He said he has rights even though he isn't a citizen at this time.

(Emphasis added.) The prosecutor then continued his argument without further objection.

This colloquy demonstrates that the district court found the prosecutor's remark innocuous and then overruled White's objection to the remark as construed. At that point, if White disagreed with the district court's interpretation of the remark, as he does on appeal, he should have immediately clarified the nature of his objection by pointing out to the court that, in the context of this trial, the remark might be construed by the jury as an attack on White's nationality or race. This would have given the district court an opportunity to consider the interpretation issue, its possible impact on the jury, and the potentially important question of whether a cautionary instruction would cure any problem. White's failure to raise the interpretation issue in a timely and concrete manner requires us to accept the district court's interpretation of the prosecutor's remark as not clearly erroneous. Therefore, the overruling of White's objection was not an abuse of discretion, and his claim of prejudicial error is obviously without merit.

Moreover, even if we consider the merits of White's contention that the prosecutor's ambiguous remark had sinister racial and ethnic overtones, White has failed to establish that the remark was improper misconduct that prejudiced his "substantial rights" so as to deny him a fair trial. *See United States v. Janis*, 831 F.2d 773, 778 (8th Cir.1987), *cert. denied*, 484 U.S. 1073, 108 S.Ct. 1046, 98 L.Ed.2d 1009 (1988). The isolated remark was made to emphasize a legitimate argument—that White had never formally complained about the alleged police beating. The district court's judgment that the remark was not an indirect appeal to racial or ethnic bias, and would not be so construed by the jury, is entitled to great deference. As the Su-

1. The HONORABLE EDWARD L. FILIPPINE, Chief Judge, United States District Court for the Eastern District of Missouri.

preme Court commented in *Donnelly v. DeChristoforo,* 416 U.S. 637, 646–47, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974):

> [C]losing arguments of counsel, are seldom carefully constructed *in toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear.... [A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.

On balance, although White urges us to reverse on the basis of *Doe,* we conclude that this case is like *United States v. Stephenson,* 924 F.2d 753, 762 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991), in which we affirmed because no prosecutor statement had "prejudiced the jury against appellants on account of their Jamaican nationality."

### III.

Because the jury disbelieved White's testimony, there was obviously overwhelming evidence that he illegally possessed cocaine at the time of his arrest. However, White argues that the evidence was insufficient to convict him of possession *with intent to distribute.* If he prevails on this issue, he would be resentenced for the lesser included possession offense, *see* 21 U.S.C. § 844(a), and his § 924(c)(1) conviction would be reversed because a simple possession offense is not a predicate "drug trafficking crime."

We may reverse a conviction for insufficiency of the evidence "only upon a demonstration that a rational jury would have had no choice but reasonably to doubt the existence of an element of a charged crime." *United States v. Watson,* 952 F.2d 982, 987 (8th Cir.1991). We must view the evidence regarding White's alleged intent to distribute in the light most favorable to the government and uphold the verdict if there is substantial evidence to support it. *See, e.g., United States v. Schubel,* 912 F.2d 952, 955 (8th Cir.1990).

The quantity of cocaine that White possessed, 7.54 grams, is insufficient standing alone to support a conviction for possession with intent to distribute. *See United States v. Franklin,* 728 F.2d 994, 999 (8th Cir.1984). However, as little as five grams has been held to be a "distributable amount," *United States v. Ramirez,* 608 F.2d 1261, 1264 (9th Cir.1979), so the question becomes whether there was enough additional evidence, including circumstantial evidence, to sustain the jury's verdict. *See United States v. Peters,* 912 F.2d 208, 211 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 981, 112 L.Ed.2d 1066 (1991).

The government did introduce additional evidence that was consistent with a finding of possession with intent to distribute. Most significant was the firearm. Because a gun is "generally considered a tool of the trade for drug dealers, [it] is also evidence of intent to distribute." *Schubel,* 912 F.2d at 956. In addition, the government introduced expert testimony that 7.54 grams is a distribution quantity, and that possessing cocaine in multiple packages (the three baggies seized plus a fourth that Malecek said he saw but could not recover) is consistent with intent to distribute. Finally, the evidence that White wired sums of money that were substantial in relation to his earned income supports an inference of drug distribution. We conclude that these other indicia of distribution, viewed in a light most favorable to the government, are sufficient to sustain the jury's verdict that White was guilty of possession with intent to distribute. *Compare United States v. Garrett,* 903 F.2d 1105, 1113 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990).

For the foregoing reasons, White's conviction is affirmed.