42 F.3d 463
 UNITED STATES of America, Appellee,
v.
Marco A. LOPEZ, Appellant.
UNITED STATES of America, Appellee,
v.
Jimmy Don WINEMILLER, Jr., Appellant.
UNITED STATES of America, Appellee,
v.
Keith GUNTER, Appellant.
UNITED STATES of America, Appellee,
v.
Barbara WHITEHEAD, Appellant.
UNITED STATES of America, Appellee,
v.
Doyen Floyd WHITEHEAD, Appellant.
 Nos. 94-1135, 94-1153, 94-1189, 94-1242 and 94-1250.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 12, 1994.
Decided Dec. 14, 1994.
 
 Michael Davis, Conway, AR, argued, for appellant Lopez.
 Randel Miller, Jonesboro, AR, argued, for appellant Winemiller.
 John S. Kitterman, Little Rock, AR, argued, for appellant Gunter.
 William McArthur, Little Rock, AR, argued, for appellant Barbara Whitehead.
 Joseph Hendrix, Little Rock, AR, argued, for appellant Doyen Whitehead.
 Keven T. Alexander, Little Rock, AR, for appellee.
 Before HANSEN, Circuit Judge, HENLEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.
 HENLEY, Senior Circuit Judge.
 
 
 1
 Marco A. Lopez, Jimmy Don Winemiller, Jr., Keith Gunter, Barbara Whitehead and Doyen Floyd Whitehead appeal their convictions for various drug-related offenses. Winemiller and Gunter also appeal their sentences. We affirm all convictions and sentences, except for Winemiller's conviction for possession with the intent to distribute methamphetamine in violation of 21 U.S.C. Sec. 841(a)(1). As to that conviction, we reverse and remand for entry of judgment and resentencing for possession of methamphetamine in violation of 21 U.S.C. Sec. 844.
 
 BACKGROUND
 
 2
 In August 1992, the Drug Enforcement Administration (DEA) began investigating Barbara and J.D. Whitehead. On September 17, 1992, Harold Jones contacted DEA agent William Bryant and told Bryant that J.D. had hired him to guard marijuana stored in a warehouse owned by Doyen Whitehead, J.D. and Barbara's son. Jones also told Bryant that he had learned from Barbara that a tractor-trailer load of marijuana was scheduled to arrive at the warehouse on September 25 and depart on September 26. On September 25, the agents saw a tractor-trailer enter the warehouse.
 
 
 3
 Based on Jones' information and surveillance, the agents obtained warrants to search the warehouse and the Whitehead house. On September 26, around 7:00 a.m., the agents saw J.D. and several men go into the warehouse and, around 8:00 a.m., saw Barbara go in. About twenty minutes later, Jones stepped outside the warehouse and, according to a pre-arranged plan, signalled to the agents that the marijuana was about to be moved. Shortly thereafter, the agents saw the tractor-trailer leave the warehouse. They also saw a van with a "Val-Care Environmental Services, Inc." logo being driven by J.D. leave. Bryant blocked J.D.'s exit and searched the van, where he found nineteen boxes labeled hazardous medical waste. Inside the boxes, he found marijuana, weighing 1265 pounds. On searching the tractor-trailer, agents found empty boxes labeled as medical waste and documents in which Gunter had certified that on July 11, 1992 he had picked up a shipment of medical waste from a facility in Dallas, Texas.
 
 
 4
 Bryant and other agents then went inside the warehouse. Bryant saw Barbara and Lopez standing next to a bale of marijuana wrapped in clear plastic and nine boxes, which contained marijuana. Lopez attempted to flee, but was apprehended.
 
 
 5
 As agents began executing the warrant on the Whitehead house, Winemiller arrived and consented to a search of his car, where in the trunk the agents found a box containing marijuana seeds, an unloaded rifle and unloaded shotgun, and camping gear. The agents then searched Winemiller and seized two baggies of marijuana. They also seized a half-dollar sized piece of methamphetamine, which fell from a hole in a plastic bag in his pocket.
 
 
 6
 On searching the house, the agents seized, among other items, marijuana, a drug ledger in Barbara's handwriting, and Gunter's certificate for training as a hazardous waste driver.
 
 
 7
 Relevant to this appeal, an indictment charged all appellants and J.D. with conspiracy to distribute marijuana in violation of 21 U.S.C. Secs. 841(a)(1), 846. The indictment also charged J.D., Barbara and Lopez with possession with the intent to distribute marijuana in violation of 21 U.S.C. Sec. 841(a)(1); Barbara and Doyen with conspiracy to launder money in violation of 18 U.S.C. Secs. 1956(a)(1), 371; and Winemiller with possession with the intent to deliver methamphetamine in violation of 21 U.S.C. Sec. 841(a)(1).
 
 
 8
 Before trial, J.D. pleaded guilty. At trial, Bryant, other agents and Jones, who had been granted immunity, testified about the events of September 25 and 26. In addition, Jones testified about other persons and activities relating to the charges. For example, he testified that J.D. had hired Gunter to haul the marijuana. Jones also stated that he had loaded marijuana from the warehouse and from a trip to Hoopestown, Illinois into Winemiller's car and had taken $10,000.00 from Winemiller to give to J.D. as payment for marijuana. Still further, Jones described a trip he had taken in a Winnebago with J.D. to Chicago, Illinois, where J.D. sold 700 pounds of marijuana. The government also presented evidence showing J.D. had travelled to Chicago, as Jones claimed; that Doyen had incorporated Air & Water, Inc., which had purchased the warehouse; that Barbara had incorporated Val-Care Environmental Services, Inc.; that neither corporation had filed corporate tax returns; and that Gunter's certification that he had picked up a load of medical waste in Texas on July 11, 1992 was false.
 
 
 9
 In addition, IRS agent Scott Hogue testified that an analysis of bank records and state and federal tax records from 1989 until 1992 showed that Barbara and Doyen's expenditures far exceeded known sources of income. In particular, Hogue testified that in 1992 Barbara had an income of $9,500.00 from Social Security disability payments, but had expenditures for the first nine months of $82,836.11, $37,792.10 of which were in cash and that Barbara had misrepresented her employment status in connection with several purchases. For example, in connection with the purchase of a van, she listed her employer as James Swindoll, the attorney who had incorporated Val-Care, but Swindoll testified that Barbara had never worked for him. As to Doyen, Hogue testified that although Doyen had represented to the IRS that he had no taxable income in 1992, he had expenditures of $102,126.10 for the first nine months of the year.
 
 
 10
 As to the methamphetamine charge against Winemiller, agent Larry Rakowski testified that as he was searching Winemiller he saw a rock-like object about the size of a half-dollar fall from a hole in a plastic bag in Winemiller's pocket. DEA forensic chemist William Glanville testified that he had analyzed the substance and found it contained 47% pure methamphetamine. Bryant testified that methamphetamine was generally sold on the "street" in rock or powder form starting in quarter-gram units for $25.00 a unit. He further testified that a four-gram quantity of methamphetamine was not for personal use and that 47% pure methamphetamine was higher than what he normally found on the street, which was in the range of 10 to 15% pure. On cross-examination, Bryant explained his opinion that a four-gram quantity was a distributable amount was based on his belief that a personal dosage unit was a quarter-gram. However, he admitted that personal use varied among individuals.
 
 
 11
 The jury convicted appellants of the charges and they now appeal.
 
 DISCUSSION
 I.
 
 12
 We first address Doyen's argument that the district court erred in failing to grant his motion to sever his trial from that of Barbara. We agree with the government that Doyen has not preserved the issue for review. Before trial, his counsel told the court that Barbara would testify for Doyen, but if she did not he would renew his motion for severance. Barbara did not testify and counsel did not renew his motion. In a somewhat similar situation, this court has held that counsel failed to preserve the claim for appellate review. United States v. Munoz, 894 F.2d 292, 295 (8th Cir.), cert. denied, 495 U.S. 909, 110 S.Ct. 1934, 109 L.Ed.2d 297 (1990). In any event, Doyen's argument is without merit. He has not demonstrated prejudice from the failure to sever.
 
 
 13
 We next turn to appellants' sufficiency-of-the-evidence challenges. Barbara, Doyen, Lopez, Gunter and Winemiller argue there was insufficient evidence supporting their conspiracy convictions; Barbara also claims insufficient evidence in regard to her possession conviction. They assert that the basis for the jury verdicts was Jones' testimony and that his testimony was incredible because he was a paid informant, had been granted immunity, had trouble remembering some dates, and psychological testing indicated that he had a poor memory. However, the jury was aware of these things, and it was for the jury, not this court, to weigh Jones' credibility. See United States v. Turk, 21 F.3d 309, 312 (8th Cir.1994); United States v. Zerba, 21 F.3d 250, 252 (8th Cir.1994). Moreover, as the court noted in denying the motions for judgments of acquittal, although Jones' testimony had some inconsistencies, his testimony "was not so incredible when weighed with other corroborating evidence produced by the government." See United States v. Gordon, 974 F.2d 97, 100 (8th Cir.1992).
 
 
 14
 There also is no merit to Barbara and Doyen's challenge to the sufficiency of the evidence supporting their money laundering convictions. They argue that the government failed to produce any evidence that the money they spent was linked to drug proceeds. "Although the government did not directly prove that the money [they] used ... came from drug sales, it was reasonable for the jury to infer this from the evidence." United States v. Turner, 975 F.2d 490, 497 (8th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1053, 122 L.Ed.2d 360 (1993).
 
 
 15
 However, we find merit to Winemiller's challenge to the sufficiency of the evidence supporting his conviction for possession with the intent to distribute methamphetamine. Winemiller does not contest the fact that Bryant testified that a four-gram quantity of methamphetamine was a distributable amount, but argues that the government failed to present testimony that the methamphetamine weighed four grams or other evidence demonstrating his intent to distribute. At oral argument, the government noted that at sentencing Winemiller stipulated that the methamphetamine weighed 4.1 grams, but conceded that it "dropped the ball" because it failed to present testimony at trial concerning the weight of the methamphetamine. The government, however, argued there was sufficient evidence before the jury based on the testimony that the methamphetamine was 47% pure as compared to methamphetamine found on the street, which was generally in the range of 10-15% pure.
 
 
 16
 We disagree with the government. It is true that " 'intent to distribute may be established by circumstantial evidence[,]' " including such things, as quantity, purity and presence of firearms, cash, packaging material, or other distribution paraphernalia. United States v. Peters, 912 F.2d 208, 211 (8th Cir.1990) (quoting United States v. Hollman, 541 F.2d 196, 199 (8th Cir.1976)), cert. denied, 498 U.S. 1094, 111 S.Ct. 981, 112 L.Ed.2d 1066 (1991). Moreover, we recognize that " '[i]ntent to distribute may be inferred solely from the possession of large quantities of narcotics.' " United States v. Ojeda, 23 F.3d 1473, 1476 (8th Cir.1994) (quoting United States v. Schubel, 912 F.2d 952, 956 (8th Cir.1990)). However, " '[p]roof of possession of a small amount of a controlled substance, standing alone, is an insufficient basis from which an intent to distribute may be inferred.' " United States v. Franklin, 728 F.2d 994, 999 (8th Cir.1984) (quoting United States v. Washington, 586 F.2d 1147, 1153 (7th Cir.1978)). "The underlying theme of such cases is that the defendant possessed a quantity which was more than he would possess for his own use." United States v. Gay, 774 F.2d 368, 372 (10th Cir.1985). For example, in United States v. Rodriguez-Sanchez, 23 F.3d 1488, 1491 n. 2 (9th Cir.1994), the court noted that a reasonable inference of intent to distribute could be drawn from possession of 294 grams of methamphetamine containing 113 grams of pure methamphetamine. The court calculated that it would take the defendant, who claimed he used two grams a week, a little less than three years to consume that quantity of methamphetamine. Id.
 
 
 17
 Assuming, without deciding, that intent can also be inferred solely from the purity of a drug, we do not believe that 47% pure, standing alone, is sufficient to prove beyond a reasonable doubt that Winemiller intended to distribute the methamphetamine. Moreover, even if evidence of weight was before the jury,[1] "the facts here [do not] bring into play the doctrine that possession of large quantities of drugs justifies the inference that the drugs are for distribution and not for personal use." United States v. Latham, 874 F.2d 852, 862 (1st Cir.1989). Although Bryant testified that a four-gram quantity was not for personal use, he admitted that personal use varied among individuals and that his opinion was based on a comparison to a $25.00 quarter-gram unit, which was the starting dose for methamphetamine sold on the street. This case is unlike Ojeda, 23 F.3d at 1476, in which this court held that an inference of intent to distribute could be drawn from possession of 7.1 kilograms of 88 to 91% pure methamphetamine, or even like Schubel, 912 F.2d at 956, in which we held an inference of intent could be drawn from possession of approximately 50 grams of methamphetamine.
 
 
 18
 Rather, this case is similar to United States v. White, 969 F.2d 681 (8th Cir.1992), and United States v. Franklin, 728 F.2d at 998-1001. In White, this court found that 7.54 grams of cocaine, which would make 75 to 80 dosage units, was insufficient, standing alone, to support a conviction for possession with intent to distribute, even though "as little as five grams has been held to be a distributable amount." 969 F.2d at 684 (quotation omitted). In Franklin, this court found that 35 grams of 42% pure cocaine, standing alone, was insufficient evidence from which a jury could infer intent to distribute. 728 F.2d at 1000. This case is also similar to United States v. Stephens, 23 F.3d 553 (D.C.Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 522, 130 L.Ed.2d 427 (1994), in which the court held that 5.9 grams of crack cocaine "could not single-handedly support an inference of intent to distribute, even when combined with [expert] testimony that ... five grams of crack would be the most an addict would buy for personal use." Id. at 557.
 
 
 19
 In all three cases, because quantity or quantity and purity combined were insufficient to support a reasonable inference of an intent to distribute, the courts looked to "additional circumstances or evidence consistent with an intent to distribute narcotics." Franklin, 728 F.2d at 999. In White, this court found sufficient additional evidence because the cocaine was packaged in multiple packages and the defendant had wired a large amount of cash and had a revolver. 969 F.2d at 684.
 
 
 20
 In contrast, in Franklin and Stephens, the courts reversed convictions for possessions with the intent to distribute because of the lack of additional evidence of intent. In Franklin, "the cocaine was not packaged in a manner consistent with distribution" and "the government offered no evidence of distribution paraphernalia, amounts of cash, weapons, or other indica of narcotics distribution." 728 F.2d at 1000. In Stephens, the crack was in "one large rock, rather than being broken into smaller distribution-sized portions" and "the police recovered no weapons, packaging material, or other distributions paraphernalia from [defendant's] person or vehicle." 23 F.3d at 556.
 
 
 21
 In this case, we conclude that the government failed to produce sufficient additional evidence from which a jury could draw a reasonable inference that Winemiller intended to distribute the methamphetamine. As in Franklin and Stephens, the drug was not packaged for resale, and the government did not introduce evidence of a large amount of unexplained cash or other distribution paraphernalia. We are aware that a rifle and a shotgun were found in the trunk of Winemiller's car and that because a firearm is " 'generally considered a tool of the trade for drug dealers, [it] is also evidence of intent to distribute.' " White, 969 F.2d at 684 (quoting Schubel, 912 F.2d at 956). However, giving the government "the benefit of any reasonable inference[ ] drawn from the evidence[,]" as we must, United States v. Ojeda, 23 F.3d at 1475 (quotation omitted), we do not believe a reasonable jury could infer that the unloaded rifle and shotgun found in the trunk of the car along with camping gear, which included duck calls and waders, were "tools" of the drug trade.[2] Indeed, the searching officer testified that the rifle was sitting "on top of all kinds of camping gear as if [Winemiller] was out camping or hunting with the weapon." We note that Winemiller's Presentence Report (PSR) did not recommend a firearm enhancement under U.S.S.G. Sec. 2D1.1, most likely because note 3 expressly provides that an "enhancement would [not] be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in his closet." See United States v. Jones, 900 F.2d 131, 135 (8th Cir.1990) (firearm enhancement inapplicable where unloaded hunting rifle found in son's room).
 
 
 22
 Because the jury found Winemiller guilty of possession with the intent to deliver, the jury "necessarily found all the elements of simple possession in violation of 21 U.S.C. Sec. 844." Franklin, 728 F.2d at 1000-01. We thus "reverse and remand for the entry of judgment accordingly and for resentencing on this lesser included offense." Id. at 1001.
 
 II.
 
 23
 Winemiller also challenges his sentence. Winemiller's PSR recommended that the marijuana count and the methamphetamine count be grouped under U.S.S.G. Sec. 3D1.2(d), which provides for grouping of drug trafficking conspiracy and distribution offenses. The PSR recommended a total offense level of 32 based on 1086.84 kilograms of marijuana, which included 317.52 kilograms of marijuana from the Hoopestown, Illinois trip, 4.1 kilograms of marijuana, which was the equivalent of the 4.1 grams of methamphetamine, and 765.22 kilograms of marijuana from the raid on the warehouse. Based on a criminal history category of I, the sentencing range was 121 to 150 months.
 
 
 24
 After the sentencing hearing, the district court believed that Winemiller should only be held accountable for 20 kilograms from the Hoopestown trip and 765.22 kilograms from the raid, for a total of 785.22 kilograms of marijuana resulting in a base offense level of 30. Although the court mentioned the methamphetamine, the court did not include it in the quantity finding. The court granted Winemiller a two-point reduction in his offense level for being a minor participant under U.S.S.G. Sec. 3B1.2(b). Based on a guideline range of 78 to 97 months, the court sentenced Winemiller to 80 months on the marijuana count and to a concurrent 80 months on the methamphetamine count.
 
 
 25
 Winemiller challenges the district court's quantity findings. We first note that although we reverse Winemiller's conviction for possession with the intent to distribute methamphetamine, we need not remand for resentencing on the marijuana count. The methamphetamine count did not affect the Guideline range for the marijuana count. See United States v. McKnight, 17 F.3d 1139, 1147 (8th Cir.) (remand for resentencing unnecessary where a vacated conviction "had no effect on the determination of ... Guidelines ranges"), cert. denied, --- U.S. ----, 115 S.Ct. 275, 130 L.Ed.2d 192 (1994).
 
 
 26
 As to the marijuana count, Winemiller argues that the district court erred in holding him accountable for the 765.22 kilograms of marijuana seized in the raid. We agree with the government that Winemiller has waived this argument. After the court announced its finding, Winemiller's counsel told the court that he had "no argument with the Court assessing less than a thousand kilos," noting that the quantity finding put Winemiller below the ten-year mandatory minimum sentence of 21 U.S.C. Sec. 841(b)(1)(A)(vii). "Having failed to object to the [court's] quantity determination ... at the sentencing hearing, [Winemiller] cannot be heard to complain now, absent plain error which is not present here." United States v. Karam, 37 F.3d 1280, 1285 (8th Cir.1994).
 
 
 27
 As to the vacated methamphetamine conviction, we believe the district court must resentence Winemiller on simple possession only. Section 3D1.2 expressly excludes grouping a simple possession offense with a conspiracy offense. The section, however, provides that "[e]xclusion of an offense from grouping under this subsection does not necessarily preclude grouping under another subsection." We will not address Winemiller's suggestion that the district court improperly grouped the offenses, but on remand he is free to raise the issue.
 
 
 28
 Because on remand the quantity of methamphetamine might be relevant, we will address Winemiller's argument that the district court erred in finding that he possessed 4.1 grams of methamphetamine. Winemiller contends that the finding is unsupported because of the lack of trial testimony as to weight. It is true that although the court mentioned that the methamphetamine weighed 4.1 grams, the court did not make an express finding. In any event, Winemiller's argument is without merit. At sentencing Winemiller stipulated that the chemist would have testified that the methamphetamine weighed 4.1 grams. While, in this case, quantity was relevant at trial as circumstantial evidence of intent, it was not an element of the offense of possession with the intent to deliver or simple possession. See United States v. Mabry, 3 F.3d 244, 250 (8th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 1403, 128 L.Ed.2d 75 (1994). For sentencing purposes, the court, not the jury, determines quantity. United States v. Abanatha, 999 F.2d 1246, 1251 (8th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1549, 128 L.Ed.2d 199 (1994).
 
 
 29
 Gunter, who was sentenced to 65 months, challenges the district court's finding that he be held accountable for 323.09 kilograms of marijuana arising from a July 1992 Dallas, Texas transaction. Contrary to his suggestion, the court did not violate his due process rights by basing the finding on evidence presented at the sentencing hearing, rather than at trial. See United States v. Galloway, 976 F.2d 414, 422-27 (8th Cir.1992) (en banc), cert. denied, --- U.S. ----, 113 S.Ct. 1420, 122 L.Ed.2d 790 (1993). Nor do we find any error in the court's finding.
 
 III.
 
 30
 Accordingly, we affirm all convictions and sentences except for Winemiller's conviction and sentence for possession with the intent to deliver methamphetamine. As to that conviction, we reverse and remand for entry of judgment and resentencing on simple possession only.
 
 
 
 [1]
 In Peters, 912 F.2d at 211, this court held that even though the government had not introduced testimony about the weight of crack cocaine, the weight was before the jury because it was written on the evidence envelope, which was introduced into evidence. In this case, the evidence envelope was not made a part of the record on appeal, but, for present purposes, we assume the weight was written on the envelope
 
 
 [2]
 We are also aware the Winemiller was charged with attempt to manufacture methamphetamine. At trial, Jones testified that he helped Winemiller, J.D. and Doyen set up a laboratory in a house in Tupelo, Arkansas and stayed a week to guard the chemicals and equipment. However, he stated that during the week he never saw anybody "cook" the chemicals and that the lab was disassembled. When agents searched the house, all they found were 25 to 30 gallon jugs of water. The district court granted motions for judgment of acquittal, finding insufficient evidence of an attempt, and we do not think that a jury could draw a reasonable inference from Jones' testimony that Winemiller intended to distribute