# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3086

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Brett Clyde, | * | |
| | * | [UNPUBLISHED] |
| Defendant-Appellant. | * | |

_____

Submitted: February 16, 2006
Filed: February 22, 2006

_____

Before LOKEN, Chief Judge, LAY and SMITH, Circuit Judges.

_____

PER CURIAM.

Brett Clyde appeals his conviction for conspiracy to possess with intent to distribute a controlled substance, arguing the evidence was insufficient to support the jury's verdict. He also argues his 120-month sentence violates the Sixth Amendment. We affirm.

I.      Background

Brett Clyde was indicted for conspiracy to possess with intent to distribute and to distribute 500 grams or more of a mixture containing methamphetamine in violation

of 21 U.S.C. §§ 841(a)(1), 846.  In December 2004, Clyde was tried before a jury.[1] In addition to being instructed on the charge in the indictment, the jury also received two lesser-included offense instructions.  The first lesser-included offense instruction required the jury to determine whether Clyde was guilty of "conspiracy to possess with intent to distribute or to distribute 50 grams or more" of a mixture containing methamphetamine.  The second lesser-included offense instruction required the jury to determine whether Clyde was guilty of "conspiracy to possess with intent to distribute or to distribute some amount" of a mixture containing methamphetamine. The jury found Clyde guilty of the first lesser-included offense.

Jeff Duncan, the government's primary witness, testified pursuant to a plea agreement.  Duncan testified that from late November 2003 until February 2004 he obtained approximately two pounds of methamphetamine from Clyde.  The government introduced Duncan's telephone records to corroborate his testimony that he was regularly in contact with Clyde during this time.  In February 2004, a confidential informant working for a drug task force placed an order for methamphetamine with Duncan.  Duncan testified he drove from his home in Mitchell to a house in Sioux Falls, where he bought methamphetamine from Clyde.  Duncan then drove back to Mitchell, where he was confronted by law enforcement agents. While being apprehended, Duncan dropped a bag containing two smaller bags, which held a total of 81.9 grams of methamphetamine.  The smaller bags contained two identifiable fingerprints, both of them Duncan's.

The government also presented the testimony of several witnesses who knew Duncan and believed he purchased methamphetamine from Clyde in order to resell it.  Curtis Stange, Duncan's roommate for over two years, stated he and Duncan used methamphetamine. Stange testified concerning several occasions in which Clyde sold

---

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, presiding.

methamphetamine to Duncan for Stange and Duncan to use. James Steinmetz testified he bought methamphetamine from Clyde several times and introduced Duncan to Clyde after Duncan told him his drug source had dried up. Steinmetz further testified that, after introducing Duncan to Clyde, he (Steinmetz) stopped buying from Clyde and instead bought from Duncan. Denise Moore and Lindath Kendall Stone testified Duncan supplied them with methamphetamine and recounted trips they took with Duncan during which they believed he obtained drugs from Clyde. Moore was with Duncan in February 2004 during Duncan's final methamphetamine purchase from Clyde and corroborated Duncan's version of events. The government also presented the testimony of Jennie Smith, who testified she met Clyde through a friend. According to Smith, Clyde came to her home and used her scale to divide a quarter ounce of methamphetamine into two "eight balls." Smith also stated she once observed Clyde wrapping what she believed to be a quarter pound of methamphetamine in black tape.

Clyde raises two issues on appeal. First, he argues the government's evidence was insufficient to support the jury's verdict. In the alternative, Clyde argues his sentence was imposed in violation of the Sixth Amendment.

II.     Sufficiency of Evidence

We review sufficiency of evidence claims de novo, viewing the evidence "in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Washington*, 318 F.3d 845, 852 (8th Cir. 2003). In reviewing the record, "we will uphold the verdict if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." *United States v. Hamilton*, 332 F.3d 1144, 1149 (8th Cir. 2003). Absent extraordinary circumstances, the reviewing court does not weigh evidence or evaluate witnesses

credibility when making sufficiency of evidence determinations.[2]  *United States v. Crenshaw*, 359 F.3d 977, 988 (8th Cir. 2004).  "We will reverse only when the jury's verdict lacks substantial evidence to support it."  *United States v. Titlbach*, 339 F.3d 692, 696 (8th Cir. 2003).

To prove Clyde was guilty of conspiracy beyond a reasonable doubt, "the government must offer either direct or circumstantial evidence to show that at least two people entered an agreement, the object of which was a violation of the law." *United States v. Reeves*, 83 F.3d 203, 206 (8th Cir. 1996).  Here, the violation at issue required the government to demonstrate Clyde conspired to possess with intent to distribute 50 grams or more of a mixture containing methamphetamine.

Clyde emphasizes that the government's primary witness, Jeff Duncan, was a co-conspirator who expected to receive a reduced sentence in exchange for his testimony.  He also points out that most of the other witnesses were also co-conspirators who were friends of Duncan.  Clyde appears to argue this evidence is not sufficient to sustain a guilty verdict unless it is supported by what he describes as "sufficient other non-co-conspirator evidence."  We disagree.

"Accomplice testimony is sufficient to support a conviction when it is not incredible or insubstantial on its face."  *United States v. Drews*, 877 F.2d 10, 13 (8th Cir. 1989); *see also Unites States v. Lopez*, 42 F.3d 463, 466 (8th Cir. 1994) (stating

---

[2]Such extraordinary circumstances arise when the reviewing court determines no reasonable person could believe the testimony offered. *United States v. Crenshaw*, 359 F.3d 977, 988 (8th Cir. 2004) ("Although ordinarily witness credibility is left completely to the jury and is beyond appellate review, we must reverse a conviction if no reasonable person could believe the incriminating testimony.").  We have indicated credibility determinations will be removed from the jury when the testimony describes an actual physical impossibility under the laws of nature or when it was physically impossible for the witness to have observed what he or she claims to have witnessed. *United States v. Baker*, 367 F.3d 790, 798 (8th Cir. 2004).

it is the jury's role to weigh testimony in light of a witness's possible motive for testifying); *United States v. Martinez*, 958 F.2d 217, 218 (8th Cir. 1992) ("The jury was aware of [the witness's] cooperation with the government, of the potential for a reduction of his sentence in exchange for his assistance, and of his extensive criminal record. They were free to give whatever weight they chose to his testimony. It is the sole province of the jury to weigh the credibility of a witness.").

Here, the government's witnesses did not present evidence that was incredible or insubstantial on its face. Rather, the events recounted by the government's witnesses substantially support the jury's conclusion that Clyde was guilty of conspiring to possess with the intent to distribute 50 grams or more of a substance containing methamphetamine. Specifically, Duncan detailed numerous drug transactions with Clyde in which he obtained drugs to resell to others. His testimony was corroborated by his phone records, which reflect frequent contact with Clyde. Moore and Stone testified they obtained methamphetamine from Duncan and recounted trips they took with Duncan in which they believe he purchased drugs from Clyde for resale. Smith stated Clyde used her scale to weigh methamphetamine. She also testified she once observed him wrapping drugs in electrical tape. The jury was free to weigh the credibility of these witnesses and reject any testimony they regarded as unbelievable. The jury's verdict indicates it found the government's witnesses credible, a conclusion we will not disturb.

Clyde also notes the government presented limited physical evidence of the crime charged, stating that, although Duncan testified he bought over two pounds of methamphetamine from Clyde, the government introduced "only" the 81.9 grams of methamphetamine Clyde sold to Duncan shortly before Duncan's arrest. Clyde points out this evidence contained Duncan's fingerprints, not Clyde's. Clyde's argument seems to be that the jury could not reasonably attribute to Clyde the sale of the 81.9 grams presented as evidence because the bags in which the drugs were packaged did not contain his fingerprints. We find this argument unavailing. By presenting roughly

82 grams of methamphetamine, the government's physical evidence supported the jury's conclusion that Clyde conspired to possess with intent to distribute 50 grams or more. It was the jury's role to evaluate the credibility of Duncan's testimony regarding whether he obtained the drugs from Clyde. The jury apparently found Duncan credible. Again, this is a conclusion we will not disturb. Accordingly, viewing the jury's verdict in the light most favorable to the government, we hold the evidence presented by the government substantially supports the jury's verdict.

III.    Sentencing

Clyde's conviction for conspiracy to possess with intent to distribute 50 grams or more of methamphetamine required a five-year minimum sentence under 21 U.S.C. § 841(b)(1)(B). However, § 841(b)(1)(B) requires courts to impose a minimum ten-year sentence if the defendant's conviction occurs "after a prior conviction for a felony drug offense has become final." Clyde's presentence investigation report showed he had a qualifying prior conviction. Accordingly, the district court imposed a ten-year minimum sentence as required by § 841(b)(1)(B).

Clyde asserts his prior conviction was based on facts not found by a jury. As such, he argues the district court violated the Sixth Amendment by using the conviction as a basis for imposing the mandatory ten-year minimum sentence. However, in his brief to this court Clyde concedes the infirmity of his own argument, noting "this Court has held numerous times that a district court which uses prior convictions to impose a mandatory minimum sentence is on firm legal ground." Indeed, in *United States v. Vieth* we stated "the Supreme Court has consistently said that the fact of a prior conviction is for the court to determine, not the jury." 397 F.3d 615, 620 (8th Cir. 2005) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) and *United States v. Booker*, 543 U.S. 220, — , 125 S. Ct. 738, 756 (2005)). Here, based on information in Clyde's presentence investigation report, the district court found Clyde had a previous qualifying conviction and imposed a ten-year minimum sentence

as required by the governing statute. Given his previous conviction, this was the most favorable sentence to which Clyde was entitled by law. *See United States v. Torres*, 409 F.3d 1000, 1004 (8th Cir. 2005). Accordingly, we reject Clyde's Sixth Amendment claim.

AFFIRMED.

_____