**UNITED STATES of America**

v.

**Sharpe PITTS, Jr., Appellant.**

**No. 90–3065.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 18, 1990.

Decided Nov. 6, 1990.

Nicholas G. Karambelas, Washington, D.C., (appointed by the court) for appellant.

Eileen F. Sheehan, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Elizabeth Trosman and Nancy J. Woodward, Asst. U.S. Attys., were on the brief, for appellee.

Before BUCKLEY, WILLIAMS, and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

After a jury trial, Sharpe Pitts, Jr., was convicted on two counts of possession with intent to distribute crack cocaine and heroin, in violation of 21 U.S.C. § 841(a) & (b)(1)(B)(iii), and 21 U.S.C. § 841(a) & (b)(1)(C). The jury acquitted Pitts of one count of possession with intent to distribute cocaine powder. He was sentenced to two concurrent terms of 108 months' imprisonment. Pitts contends the trial court erred in giving a missing witness instruction and in allowing the prosecutor to argue that the absent witness would have testified unfavorably to Pitts. We reverse.

I

Early in the evening on September 9, 1989, a bus carrying four passengers from New York City to Winston–Salem, North Carolina, pulled into a terminal in Washington, D.C. During the layover, the passengers left the bus and walked into the bus station. Officers of the Metropolitan Police Department's Narcotic Interdiction Unit then boarded. The officers looked around the bus, took note of a blue tote bag in an overhead compartment and left. When the four passengers reboarded, Pitts and another individual took the seats directly underneath the bag.

The officers then reentered the bus and asked Pitts and his companion a few questions. They told the officers they had no identification, but upon request the companion produced two bus tickets for the trip. The officers then asked whether either of them owned the bag above them. When they and the two other passengers disclaimed ownership, the officers searched the bag. In the bag, in the pocket of a pair of size 36 pants, they found cocaine and heroin. The officers removed the bag from the bus, searched it more thoroughly and discovered several other items of clothing of various sizes, including a Redskins jack-

et inscribed with the name Sharpe Pitts, an address and a telephone number.

The officers boarded the bus again. Pitts was in his original seat. His companion had moved to the other side of the aisle, several rows away. An officer asked Pitts to give his name. When Pitts complied, the officers arrested him. As he was being taken off the bus, one of the officers held up the jacket and said to Pitts "Hail to the Redskins."

On the second day of his two-day trial, Pitts testified that the blue bag belonged to his companion, whom he identified as Rodney Polk, a resident of Winston–Salem. He denied owning the size 36 pants and the drugs found in them, although he admitted the jacket was his. He explained that he had been driving to New York with Polk, that the car broke down and that he and Polk then took a bus the rest of the way. According to Pitts he left his suitcase behind and put a few items of clothing in Polk's blue bag. Pitts said he wore size 32 pants. He denied knowing anything about the drugs found in the bag. The defense also called Timothy Rhodes, a resident of Winston–Salem, who testified that on September 4, 1989, he heard Rodney Polk say he was going to New York to "get some dope."

Neither the defense nor the prosecution called Rodney Polk to testify. At the close of the evidence the prosecutor requested a missing witness instruction. Defense counsel protested on the grounds that his investigator had been unable to locate Polk and that, in any event, Polk had a Fifth Amendment privilege not to testify. The court granted the prosecution's request and denied defendant's motion to reopen and present evidence regarding defense efforts to find Polk.

In her closing argument, the prosecutor referred to the anticipated instruction and contended that Pitts had the peculiar ability to produce Polk. She told the jury that if Pitts had been telling the truth he would have called Polk as a witness, in which event Polk would have invoked his Fifth Amendment privilege or admitted that the drugs were his. Since Polk had not ap-

peared, she asked the jury to infer that his testimony would have been damaging to the defendant. The court then charged the jury as follows:

> If evidence material to a witness who could have given material testimony on an issue in this case was peculiarly within the power of one party to produce and was not produced by that party, and its absence has not been sufficiently accounted for or explained, then you may, if you deem it appropriate, infer that the evidence would have been unfavorable to the party which failed to produce it.
>
> However, no such inference should be drawn by you with regard to evidence which was equally within the power of either party to produce, or which would have been merely cumulative or immaterial.

## II

■ Not everyone who could give relevant evidence is necessarily called to testify at trial. Considerations of strategy, economy and logistics, reinforced by the rule against cumulative evidence, serve to limit the number of trial witnesses. There are some persons, however, who potentially have so much to offer that one would expect them to take the stand. If such a person does not appear and one of the parties had some special ability to produce him, the law permits the jury to draw an inference—namely, that the missing witness would have given testimony damaging to that party. To drive the point home, opposing counsel may argue the inference to the jury after obtaining the court's permission (*Gass v. United States*, 416 F.2d 767, 775–76 (D.C.Cir.1969)), and the court may instruct the jury as it did here, in language derived from *Graves v. United States*, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893).

In this case, the government claims Pitts had it "peculiarly within his power to produce" his travelling companion. We are not so sure. It is true that Pitts knew his companion's name and place of residence and that the officer on the bus failed to note the name Polk gave him. But it is not

true that the prosecution became aware of Polk's "identity" only in the midst of trial, as the government's brief recites, and as the prosecutor represented to the district court. During a suppression hearing, held one month before trial, defense counsel identified his client's companion as "Rodney Polk," invoked Polk's name dozens of times in questioning the arresting officers and announced that at trial he would prove the person sitting with Pitts on the bus was Rodney Polk. Armed with Polk's name and the knowledge that he was on a bus headed for Winston–Salem, the government may have been able to track him down before trial as readily as Pitts, who remained in Washington.

Defense counsel has not, however, challenged the government's representations despite their apparent inaccuracy or sought to show that the government had reason to seek Polk out. Rather, the argument here and in the district court proceeds on the basis that even if Pitts possessed some "peculiar power" to bring Polk into court, the missing witness rule still should not have been invoked against him. We agree.

■ The critical consideration is that Polk clearly had a Fifth Amendment privilege against testifying. Polk's relationship to the transactions, together with defense testimony implicating him in the offenses, leaves no doubt on this score. The prosecution itself told the jury that Polk jointly participated in the crimes. This brings the case squarely within *Pennewell v. United States*, 353 F.2d 870 (D.C.Cir.1965). The missing witness in *Pennewell* was, according to the defense theory, solely responsible for the crime; according to the prosecution, the missing witness was jointly responsible. We held that the prosecutor should not have been permitted to argue the inference because it could not "reasonably be supposed that the missing witness would have supported the defendant's account, even if true" (353 F.2d at 871).

The government would have us distinguish *Pennewell* on the ground that the defendant there at least had a subpoena issued for the missing witness. But that was of no moment. The subpoena was *duces tecum,* not *ad testificandum;* it was

issued only six days before trial; and it was never served. 353 F.2d at 871. Nothing turned on the sufficiency of the defendant's efforts to produce the witness and the opinion is therefore silent about the subject.

What mattered in *Pennewell* and what matters here is something else entirely. The adverse inference rests on the assumption that a party will call important witnesses who support that party's version of the events. But in this case there is no reason to suppose anything of the sort. If Polk were solely responsible for the drugs, as Pitts claimed, there was scant likelihood of his assisting the defense. A witness may not be put on the stand for the purpose of allowing the jury to watch him "take the Fifth." *Bowles v. United States*, 439 F.2d 536, 541–42 (D.C.Cir.1970) (en banc), *cert. denied,* 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971). Only by waiving his Fifth Amendment privilege and incriminating himself could Polk have supported the defense. The probability of that event was, to say the least, low. If he chose to testify at all, it was far more likely that Polk would have been a hostile witness, intent on saving himself by shifting the blame back to Pitts. Polk was, in short, a witness who could not be expected to support the defendant's version even if it were accurate.

■ For these reasons a defendant has no duty to produce a witness who, like Polk, could aid the defense only by incriminating himself. No inference of testimony adverse to the accused may be drawn from the absence of such a witness. *United States v. Young*, 463 F.2d 934, 942 (D.C. Cir.1972). Numerous state courts faced with this situation have reached the same result. *See, e.g., Lawson v. United States*, 514 A.2d 787, 791 (D.C.1986); *Christensen v. State*, 274 Md. 133, 333 A.2d 45, 48–49 (1975); *State v. Cavness*, 46 Haw. 470, 381 P.2d 685 (1963). *See also* 1 Wharton, Criminal Evidence § 88 (14th ed. C. Trocia 1985), and cases there cited. We do not decide the extent to which a prosecutor, in commenting on the evidence or lack thereof, may suggest that a witness's absence should weigh against the defense in some other way. *Compare Burgess v. United*

*States*, 440 F.2d 226, 235 (D.C.Cir.1970) (opinion of Fahy, J.), *with United States v. Young*, 463 F.2d at 943 n. 16. We hold only that the jury may not be instructed or asked to infer that a missing witness in Polk's position would have given testimony damaging to the defendant.

*United States v. Craven*, 458 F.2d 802 (D.C.Cir.1972) (per curiam), does not affect our conclusion. Craven sprung an alibi defense before Rule 12.1, Fed.R.Crim.P., had come into effect. He claimed he was not at the scene of the shooting but was elsewhere with his cousins "Willie" and "Bubbles," neither of whom he produced at trial. The court sustained a missing witness instruction. Unlike this case and *Pennewell*, Craven's cousins could have supported his version without confessing to the crime. They may nevertheless have made themselves scarce out of fear of being charged as accomplices. But whether that explained their absence related to the sufficiency of the defendant's excuse for not finding them (458 F.2d at 805), a matter we have found unnecessary to address in this case.

Having determined that the trial court erred in allowing the missing witness argument and in giving the related instruction, we are faced with the government's contention that the errors were harmless. We do not share the government's confidence that the argument and instruction had no effect. Despite Pitts' proximity to the bag containing the drugs and the presence of his jacket in the bag, the case against him was not overwhelming. His defense depended on the jury's view of his credibility and its decision whether to accept his explanation that the drugs were Polk's not his. On both scores, the jury may well have been influenced by the prosecutor's argument and the missing witness charge. The errors therefore cannot be considered harmless. *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

*Reversed and Remanded.*