UNITED STATES of America

v.

James Milton STEPHENS, Appellant.

UNITED STATES of America

v.

Tony Anthony McCRAY, Appellant.

Nos. 92–3050, 92–3073.

United States Court of Appeals, District of Columbia Circuit.

Argued April 4, 1994.

Decided May 27, 1994.

Edward C. Sussman (appointed by the Court), argued the cause and filed the brief, for appellant Stephens.

Cheryl D. Stein (appointed by the Court), argued the cause and filed the brief, for appellant McCray.

Mary B. Murphy, Asst. U.S. Atty., argued the cause, for appellee. With her on the brief were J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, and John R. Fisher and Roy W. McLeese, III, Asst. U.S. Attys.

Before WALD, EDWARDS, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Appellants James M. Stephens and Tony Anthony McCray appeal from convictions of drug violations. We find no merit in Stephens's assignments of error and affirm his conviction for distribution of cocaine base within 1,000 feet of a school, 21 U.S.C. § 860(a) (1988). We agree with McCray that there was insufficient evidence to support a verdict on the element of intent in his conviction for possession with intent to distribute cocaine base within 1,000 feet of a school, also a violation of 21 U.S.C. § 860(a). Therefore, as for McCray, we vacate and remand for sentencing for conviction of simple possession of a controlled substance.

## I. BACKGROUND

On September 12, 1991, Officer Jeffrey Williams and two other vice officers, Michael Irving and Ramonz Height, were on routine patrol in a marked cruiser in an area of Washington, D.C. notorious for illegal gambling and distribution of crack cocaine. Officer Williams was driving the car, Officer Irving was seated in the front passenger seat, and Officer Height rode in the back. As the car approached the intersection of 16th Street and Good Hope Road, Williams

noticed appellants in the parking lot of a Chinese carryout on the corner. Officer Williams saw appellant Stephens reach into his right pants pocket and hand McCray a clear plastic bag containing a white rock-like substance. Williams informed his partners that he believed he had just observed a narcotics transaction. Height turned his attention toward appellants and observed that both McCray and Stephens had money in their hands. He then saw McCray attempt to give some money to Stephens, which Stephens refused or "pushed back," making a waving gesture with his hands.

Williams turned the corner and drove the police car into the parking lot. As the police car approached, Officer Height observed McCray drop an object down his shirt. Officer Williams exited the police car, detained Stephens, recovered $177 in currency from his hand, and placed him under arrest. Officer Height approached McCray, removed him from his vehicle, and recovered a large white object, which he believed to be crack cocaine, from the inside of his shirt. Height placed McCray under arrest and then recovered an additional $511 from McCray's person.

Stephens and McCray were charged in a four-count indictment filed October 3, 1991. Count one charged Stephens with distribution of cocaine base, 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B)(iii). Count two charged Stephens with committing the same offense within 1,000 feet of a school, 21 U.S.C. § 860(a). Count three charged McCray with possession with intent to distribute cocaine base, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). Count four charged McCray with committing the same offense within 1,000 feet of a school, 21 U.S.C. § 860(a).

Appellants filed a pretrial motion to suppress tangible evidence, which the trial court denied. After a jury trial, appellants were convicted on all counts. The government then dismissed counts one and three on the ground that they were lesser included offenses of counts two and four. Stephens and McCray now appeal, arguing that the trial court improperly denied their motion to suppress physical evidence and that there was insufficient evidence to support their convictions.

## II. ANALYSIS

We find no merit in appellants' arguments with respect to the District Court's denial of their motion to suppress. The record evidence fully supports the District Court's determination of probable cause. In addition, the government introduced ample evidence, including eyewitness testimony, to sustain Stephens's conviction of narcotics distribution within 1,000 feet of a schoolyard. We are persuaded, however, that the government failed to present sufficient evidence of McCray's intent to distribute crack cocaine to sustain his conviction of possession with intent to distribute narcotics within 1,000 feet of a schoolyard.

 In reviewing the sufficiency of the evidence, this court must affirm the conviction if " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Washington*, 12 F.3d 1128, 1135–36 (D.C.Cir.1994) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). In order to prove a violation of 21 U.S.C. § 860(a), the government was required to prove beyond a reasonable doubt that McCray knowingly and intelligently possessed a controlled substance with the intent to distribute, and possessed those drugs within 1,000 feet of a school. *See United States v. McDonald*, 991 F.2d 866, 869 (D.C.Cir.1993). McCray contends that no reasonable jury could find beyond a reasonable doubt that he had the requisite specific intent to distribute the 5.9 grams of crack cocaine found in his possession. We agree.

 Intent to distribute may be proved through either direct or circumstantial evidence. *United States v. Castellanos*, 731 F.2d 979, 984 (D.C.Cir.1984). In this case, the government sought to establish McCray's intent to distribute through circumstantial evidence consisting of: 1) the $511 cash found on McCray's person at the time of his arrest; 2) the fact that McCray was arrested

in a high-drug area; and 3) the expert testimony of Officer David Stroud, who offered his opinion that the 5.9 grams of crack cocaine in McCray's possession was an amount greater than that normally possessed by hard-core drug users and had a street value of approximately $800. Evaluating these items leads us to conclude that the evidence adduced by the government was insufficient to prove McCray's intent to distribute beyond a reasonable doubt.

■ First, although we have held that "possession of a relatively large amount of cash" may support the inference of intent to distribute, *see United States v. Gibbs*, 904 F.2d 52, 57 (D.C.Cir.1990), in this case the $511 found on McCray's person does not aid the government's case. A defendant's possession of a large sum of unexplained cash supports an inference of intent to distribute only insofar as it suggests that the defendant is toting his profits from prior narcotics sales. *See United States v. Brett*, 872 F.2d 1365, 1370 (8th Cir.), *cert. denied*, 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989). Thus, in *Brett*, which we cited approvingly in *Gibbs*, the Eighth Circuit specified that "the presence of a large sum of unexplained cash *in connection with other evidence of drug trading* is probative of the previous occurrence of drug transactions," and may support an inference of future intent to distribute. *Brett*, 872 F.2d at 1370 (emphasis added).

In this case, the cash is not "unexplained" nor is it possessed "in connection with other evidence of drug trading." The government's evidence itself quite thoroughly explains the cash. Officer Stroud testified as an expert witness that at least this much money could have been expected to pay for the drugs that McCray had apparently purchased from Stephens. Indeed, Officer Height testified that he observed McCray offering the money to Stephens after he obtained the rock. Thus, this case is not parallel to other cases in which defendants possessed sums of money simultaneously with or after possession of cocaine so as to support an inference that the possessor was vending rather than merely caught in the act of purchasing for personal use.

Moreover, in our prior cases in which relatively large sums of cash have been found to support an inference of intent to distribute, the government has offered other evidence of distribution. *See, e.g., Gibbs*, 904 F.2d at 57 ($576 in small bills added to inference of intent to distribute where defendant was also in possession of loaded machine gun and 37 rocks of crack cocaine, some of which were separately wrapped); *United States v. Herron*, 567 F.2d 510, 513 (D.C.Cir.1977) (where narcotics cutting paraphernalia and large quantity of drugs found in house, "[t]he $150 to $200 in cash that was on the table *next* to the heroin packaged in folded tinfoil slips was also some evidence of distribution," as was the $16,000 in cash that was discovered elsewhere in the apartment); *United States v. Lee*, 506 F.2d 111, 120 (D.C.Cir.1974) (intent to distribute established, in part, by presence in defendant's "apartment of over $3000 in hidden cash and of drugs and material indicating a substantial wholesaling operation"), *cert. denied*, 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975).

In contrast, the government here offered no other evidence suggesting distribution: the crack McCray possessed was in one large rock, rather than being broken into smaller, distribution-size portions; it was not packaged for distribution; the police recovered no weapons, packaging materials, or other distribution paraphernalia from McCray's person or vehicle; and the government offered no testimony regarding actual prior distributions by McCray. In the absence of some independent evidence of prior or contemporaneous drug sales by McCray, it would be mere speculation for the jury to infer that the $511 recovered from his person were proceeds from prior drug transactions indicative of his future intent to distribute.

Second, under the circumstances of this case, the fact that McCray was arrested in a high-narcotics area is irrelevant to his intent to distribute. Of the government's own admission, McCray had just finished buying the 5.9 grams of crack from appellant Stephens when police entered the parking lot where they had conducted this transaction and arrested them both. That this parking lot was in an area notorious for crack dealing does

not add one bit to the likelihood that McCray purchased crack from Stephens intending to distribute it. Both buyers for redistribution and buyers for personal consumption must, of necessity, buy their drugs in a place where drugs are sold.

Third, Officer Stroud's testimony that in his opinion, the amount of crack in McCray's possession would sell at a "wholesale" price of $400 to $500 but would be worth approximately $800 "retail" on the street, also does not help the government's position. The government argues that Stroud's testimony regarding the "retail" and "wholesale" prices of the crack McCray purchased would permit the jury to infer that McCray was purchasing the crack as a wholesaler who would stand to make $300 to $400 profit from future resale of the drugs. None of this testimony, however, supports an inference that McCray purchased the drugs in order to resell them. The differential in price as to which Stroud testified is not dependent on the business status of the seller. The purchaser of cocaine rock does not get it cheaper because he is planning to resell it; he gets it cheaper because he is buying it in a piece. In other words, rather than adding anything to the evidence that McCray possessed cocaine in a 5.9 gram quantity, the possibly reduced price here is merely a surrogate for that same fact. That it would have been possible for him to make a profit by dividing the 5.9 grams and selling it in smaller pieces is not evidence that he had the intent to do so.

Indeed, the evidence is not pellucid that the $511 found on McCray's person encompassed the entire contemplated purchase price. Officer Height testified that after appellants had seen the police cruiser, McCray attempted to hand a sum of money to Stephens, which Stephens refused. Police later recovered $511 from McCray and $177 from Stephens. There was no evidence to indicate how much money, if any, was ever transferred from McCray to Stephens or subsequently "pushed back" from Stephens to McCray. Thus, all the government's evidence showed was that the actual purchase price of the drugs fell somewhere in the $1 to $688 range. The evidence does not strongly suggest that the purchase price offered to

McCray was in fact closer to the "wholesale" price of $400 to $500 than the "retail" price of $800. In sum, Stroud's testimony regarding the retail-wholesale differential lacks logical relevance and does not aid the government.

Finally, the amount of crack in McCray's possession (5.9 grams) could not single-handedly support an inference of intent to distribute, even when combined with Officer Stroud's testimony that, in his experience, five grams of crack would be the most an addict would buy for his personal use. We have previously recognized that, when combined with other evidence of distribution, a defendant's possession of a quantity of drugs only moderately greater than the amount typically possessed for personal use may add to the inference of intent to distribute. *See, e.g., Gibbs,* 904 F.2d at 57 (jury may infer intent to distribute from a *"combination* of suspicious factors, such. as possession of a relatively large amount of cash, weapons, more than a minimal amount of narcotics, and activity in an area of 'high narcotic trafficking' ") (emphasis added); *Castellanos,* 731 F.2d at 984 (defendant's possession of six ounces of cocaine plus drug paraphernalia supported inference of intent to distribute); *United States v. Raper,* 676 F.2d 841, 843 & 845 (D.C.Cir.1982) (possession of thirteen "quarters" of heroin supported inference of intent to distribute where police had witnessed actual drug sale by defendant immediately prior to his arrest); *see also United States v. Davis,* 562 F.2d 681, 685 (D.C.Cir. 1977) ("From all this testimony, *i.e.,* the packaging and processing materials, the wide variety of drugs that were confiscated in the apartment . . . [,] the 25 pieces of marijuana smoking apparatus, a reasonable mind could conclude that, even if the three lessors of the apartment were users, they did not possess over $1,449.00 of a wide variety of drugs for their personal use.") (internal citation omitted).

■ However, case law from this and other circuits indicates that when the government seeks to establish intent to distribute based solely on the quantity of drugs found in a defendant's possession, the quantity possessed must significantly exceed that neces-

sary for personal use. *See, e.g., United States v. Robinson,* 870 F.2d 612, 613 (11th Cir.1989) (evidence sufficient where expert testified that 25.2 grams of crack "was an extremely large amount for a mere user to possess"); *United States v. Gaviria,* 740 F.2d 174, 184 (2d Cir.1984) (bare possession of seven grams of cocaine insufficient to support conclusion of intent to distribute); *United States v. Franklin,* 728 F.2d 994, 999 (8th Cir.1984) (possession of 35 grams of cocaine powder of 42% purity by itself insufficient to support conclusion of intent to distribute); *see also United States v. White,* 969 F.2d 681, 684 (8th Cir.1992) (noting that possession of 7.54 grams of cocaine in itself would be insufficient to support a conviction for possession with intent to distribute); *United States v. Garrett,* 903 F.2d 1105, 1112 (7th Cir.) ("possession of a small amount of a controlled substance, standing alone, is an insufficient basis from which to infer an intent to distribute"), *cert. denied,* 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990).

Here, the crack found in McCray's possession outweighed Officer Stroud's estimate of the amount typically possessed for personal consumption by only .9 grams, or 18 percent. That simply is not enough evidence to support a conclusion beyond a reasonable doubt that McCray intended to break the larger rock into two or more rocks each less than Stroud's maximum unit of personal use possession as opposed to consuming it in a quantity slightly exceeding that unit. Therefore, his conviction under 21 U.S.C. § 860(a) cannot stand.

■ At first glance, it would appear that we could treat McCray's conviction for possession with intent to distribute within 1,000 feet of a school as necessarily encompassing the lesser included offense of possession of cocaine base (crack) under the third sentence of 21 U.S.C. § 844(a). However, it is law of the Circuit that possession of cocaine base is not a lesser included offense of possession with intent to distribute under 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B)(iii). *United States v. Michael,* 10 F.3d 838, 842 (D.C.Cir. 1993). We cannot, consistently with *Michael,* hold that possession of cocaine base is a lesser included offense of possession with intent to distribute within 1,000 feet of a school under 21 U.S.C. § 860(a). However, simple possession of a controlled substance in violation of the first sentence of 21 U.S.C. § 844(a) remains a lesser included offense. *Michael,* 10 F.3d at 839. We therefore vacate the judgment as to McCray under § 860(a) and remand the case to the District Court with directions to enter a judgment of conviction under the first sentence of § 844(a) and to resentence McCray accordingly.

## III. CONCLUSION

Finding no merit to appellant Stephens's contentions on appeal, we affirm his conviction for distribution of a controlled substance within 1,000 feet of a schoolyard. However, the government failed to introduce sufficient evidence of McCray's intent to distribute to sustain his conviction for possession with intent to distribute crack cocaine within 1,000 feet of a schoolyard. Therefore, the judgment of the District Court is affirmed as to Stephens. As to McCray, it is remanded for resentencing consistent with this opinion.

*It is so ordered.*