UNITED STATES of America, Appellee,

v.

Eric GLENN, Appellant,

UNITED STATES of America, Appellee,

v.

Gregory SOUDER, Appellant.

Nos. 93–3211, 94–3096.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 17, 1995.

Decided Sept. 8, 1995.

Allen E. Burns, Asst. Federal Public Defender, Washington, DC, argued the cause for appellant Eric Glenn. On brief was A.J. Kramer, Federal Public Defender, Washington, DC.

Joanne M. Vasco, appointed by this court, Washington, DC, argued the cause for appellant Gregory Souder.

Glenn L. Kirschner, Asst. U.S. Atty., Washington, DC, argued pro hac vice for the appellee. On the brief were Eric H. Holder, Jr., U.S. Atty., and John R. Fisher and Thomas C. Black, Asst. U.S. Attys., Washington, DC.

Before EDWARDS, Chief Judge; BUCKLEY and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Eric Glenn and Gregory Souder were arrested following a Metropolitan Police Department (MPD) raid of a house on Ridge Road, Southeast, in the District of Columbia. Police officers found Souder in his upstairs bedroom where they also discovered two large rocks of cocaine. They found Glenn in

the downstairs living room with nine small bags of cocaine on his person. Glenn and Souder were subsequently charged with and convicted of possession of cocaine base with intent to distribute. They now appeal their convictions. The primary issue is whether the district court properly instructed the jury that it could draw an adverse inference from the defendants' failure to call as a witness Souder's brother, Derrick Souder, who purportedly shared the bedroom in which Souder was arrested. We conclude that the missing witness instruction was given in error and was sufficiently prejudicial to require reversal of Souder's conviction but was harmless with respect to Glenn. The appellants raise additional challenges to the sufficiency of the evidence and on other issues but none has merit.

## I. BACKGROUND

Several MPD officers forcibly entered the Ridge Road house to execute a search warrant on May 29, 1993 at about 1:00 A.M. They first encountered Glenn, who was standing in the living room near the dining room table. An officer ordered Glenn to "freeze" and lie on the floor and he complied. Trial Transcript (Tr.) 2–62. Moving upstairs at the same time, police sergeant David Sledge saw Gregory Souder in one of the upstairs bedrooms. Sledge testified at trial that as he approached the bedroom door he saw Souder come to a sitting position on one of the two beds in the room, stand up and hop across the room to the other bed. Souder had casts on one of his arms and one of his legs. Officer Donald Leach then joined Sledge in the bedroom and searched it, finding two large white rocks later determined to be 24.7 grams of cocaine base under the mattress of the bed from which Sledge indicated Souder originally had arisen. In addition, police discovered two pagers on a table between the two beds and mail addressed to Gregory Souder. Sledge took Souder downstairs, searched him and found $295 in cash in one of his pants pockets.

Officer Daron Regan, who had been called upstairs to seize the cocaine found in the bedroom, then returned downstairs and searched Glenn. Regan testified at trial that he found a plastic bag containing nine smaller ziplock bags in Glenn's pants pocket. The nine smaller bags all contained white rocks later determined to total 1.694 grams of cocaine base. Glenn maintains that the officers planted the cocaine on him. He testified at trial that Regan patted him down, held up the bag containing the cocaine and told him "Clean, I told you I would get you." Tr. 5A–7–8. "Clean" is the nickname of Derrick Souder. Tr. 4–114. Glenn stated that he told Regan his name was not "Clean" and disavowed any knowledge of the cocaine. After searching Glenn, Regan then discovered a box on the nearby dining room table. The box was labeled as a package for a videotape of Walt Disney's *Fantasia*. Instead, it contained small empty ziplock bags and razor blades.

A grand jury indicted Glenn and Gregory Souder on June 17, 1993 and a consolidated jury trial began on September 10. Souder was charged with possessing with intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and Glenn was charged with possessing with intent to distribute a detectable amount of cocaine base in violation of 21 U.S.C. § 841(a)(1). The government's evidence at trial included expert testimony from MPD Detective David Stroud. The prosecution elicited Stroud's opinion that a hypothetical person's possession of the same items Regan indicated he found on and near Glenn would be consistent with an intent to distribute cocaine. Specifically, the prosecutor asked "Now, if I were to tell you that a person had those nine bags with this quantity of cocaine in their pocket, would you say that that was more consistent with having that cocaine for that person's personal use or for distributing to others." Tr. 3–39. Stroud replied "Distributing to others."[1] *Id.* Stroud similarly

---

**1.** The prosecutor later asked "Returning to my hypothetical, if I were to tell you that our hypothetical person with the nine ziplocks in his pocket were found a few feet away from [the video box], would that—first, would that alter your opinion at all as to whether or not that person's possession was consistent with distribution?" Tr. 3–44. Stroud replied that the evidence would strengthen his opinion "[b]ecause anybody who is in close proximity of all the

testified that possession of the 24.7 grams of cocaine found in the upstairs bedroom was consistent with an intent to distribute, especially when found in proximity to pagers.

Souder's defense was that he shared the bedroom with his brother, Derrick, that the bed in which the cocaine was found was Derrick's and that he knew nothing about the cocaine.[2] Both Souder and his girlfriend, Lakishia Young, testified that he was holding, for her, $275 that she had saved to make an insurance payment. An employee of the paging company that sold the pagers testified that one of the pagers found in the bedroom had been purchased by someone giving the name of Derrick Souder and that the pager had received 4,282 calls over the previous eight months.

During the charge conference the prosecution requested a missing witness instruction with respect to Derrick Souder. The prosecutor represented that the police had repeatedly been unable to locate Derrick Souder at the Ridge Road home to subpoena him to testify even though one of his nephews said that he had recently been there. The district judge accordingly concluded that Derrick Souder was "certainly available more to the defendants than to the government." Tr. 5–144–45. Glenn's counsel argued that the missing witness instruction nonetheless would be inappropriate in light of the holding in *United States v. Pitts*, 918 F.2d 197 (D.C.Cir.1990), because any relevant testimony that Derrick Souder could give on his brother's behalf would incriminate him as the owner of the cocaine found in the bedroom. The district court was unpersuaded that Derrick Souder would exercise his fifth amendment right, commenting "I really have nothing to tell me that he would be exercising his fifth amendment right. I have counsel tell-

ing me." Tr. 5–156. She subsequently gave the instruction.[3] The prosecution also raised the missing witness issue in its rebuttal argument to the jury.

During its deliberations the jury sent a note to the judge asking "When you told us that either side could call up a witness they had access to, what exactly does that mean? Could the Government have called up Derrick Souder or not?" Tr. 6–44. The court responded "There is nothing in the evidence to reflect whether or not the Government could have called Derrick Souder as a witness." Tr. 6–50. The jury convicted Glenn on the first day of its deliberations and Souder on the Monday following a weekend recess.

## II. DISCUSSION

### A. Missing Witness Instruction

■ As a general matter, a trial judge has discretion to give a missing witness instruction "if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction." *Pennewell v. United States*, 353 F.2d 870, 871 (D.C.Cir. 1965) (quoting *Graves v. United States*, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893)). "If such a person does not appear and one of the parties had some special ability to produce him, the law permits the jury to draw an inference—namely, that the missing witness would have given testimony damaging to that party." *United States v. Pitts*, 918 F.2d 197, 199 (D.C.Cir.1990).

The *Pitts* and *Pennewell* decisions also make clear, however, that "no inference can fairly be drawn against defendant from his failure to call [a witness] to the stand to

equipment ... would have to be involved in a distribution operation." *Id.*

2. Souder also claimed that he had been on the other bed, not the one concealing the drugs, the whole time and that his young nephews had been in the bedroom playing a video game at the time of the police raid. One of the nephews, a 13 year old, corroborated Souder's story but Sledge repeated his account when recalled as a rebuttal witness.

3. The instruction was: "If a witness who could have given material testimony on an issue in this

case was peculiarly within the power of one party to produce, was not called by that party and his absence has not been sufficiently accounted for or explained, then you may, if you deem it appropriate, infer that the witness's testimony would have been unfavorable to the party which failed to call him. However, you should not draw such an inference from a witness who was equally available to both parties or whose testimony would have been merely cumulative or immaterial." Tr. 6B–13.

incriminate himself." *Pennewell*, 353 F.2d at 871. *Pitts* explained:

> The adverse inference rests on the assumption that a party will call important witnesses who support that party's version of the events. But in this case there is no reason to suppose anything of the sort. If [the witness] were solely responsible for the drugs, as Pitts claimed, there was scant likelihood of his assisting the defense.... Only by waiving his Fifth Amendment privilege and incriminating himself could [the witness] have supported the defense. The probability of that event was, to say the least, low....
>
> For these reasons a defendant has no duty to produce a witness who ... could aid the defense only by incriminating himself.

918 F.2d at 200.

■ The appellants argue that the missing witness instruction in this case was erroneous under *Pitts* and we agree. Gregory Souder's defense is that he knew nothing about the cocaine and that the bed in which it was found belonged to his brother. The inescapable inference of this theory, especially when tied to the pager rented in Derrick Souder's name, is that the cocaine belonged to Derrick Souder. The testimony that Derrick Souder could have offered on his brother's behalf would thus have tended to incriminate him. Although Derrick Souder would undoubtedly not have testified outright that the cocaine was his, we think it ultimately dispositive that testimony on any issue material to the defense (such as whether he shared the bedroom with his brother, which

bed was his and the ownership of the pager) would also have led directly to the inference that the cocaine belonged to him.[4]

■ Having concluded the district court erred, we must determine whether the error was harmless to either appellant. As to Gregory Souder, the answer is no. The district judge acknowledged at the charge conference that the case against Souder, as in *Pitts*, was "relatively weak." Tr. 5–156–57. The adverse inference from the missing witness instruction was therefore likely to have directly influenced the jury's evaluation of Gregory Souder's guilt. *See United States v. Smith*, 591 F.2d 1105, 1111–12 (5th Cir.1979) ("It is impossible to conclude that the error was harmless. The bottom line of the only argument that defendant could make was that the guns were in his wife's possession. This was the very heart of [the] defense."). The jury's note requesting clarification and asking whether the government could have produced Derrick Souder further demonstrates that the instruction played at least some role in its decision.

■ With respect to Glenn, the error was harmless. Glenn argues that Regan's alleged reference to him as "Clean" demonstrates that the police mistakenly believed that he was Derrick Souder. Whether the officers believed him to be Eric Glenn or Derrick Souder, however, his defense turned entirely on whether the police found the cocaine in Glenn's pants or planted it there. The jury chose to believe Regan instead of Glenn and we see no way that the improper instruction could have had a bearing on that determination.

---

4. The government argues that *Pitts* is distinguishable because Derrick Souder would not have incriminated himself under the prosecution's theory of the case. Both *Pennewell* and *Pitts* held, however, that the self-incrimination question must be considered in the context of the defendant's case when the adverse inference of a missing witness instruction is to be drawn against the defendant. *Pitts*, for example, noted that "Polk was ... a witness who could not be expected to support *the defendant's* version even if it were accurate." 918 F.2d at 200 (emphasis added). *Pennewell* similarly held the inference improper where "it cannot reasonably be supposed or inferred that the missing witness would have supported *the defendant's* account." 353 F.2d at 871 (emphasis added).

The government further asserts that Souder's counsel waived the missing witness argument by stating that his objection to the missing witness instruction rested on whether Derrick Souder was peculiarly available to the government. *See* Tr. 5–153. The district judge, however, expressly addressed the self-incrimination argument which defense counsel had earlier discussed with her at length. Tr. 5–155. Although we need not decide whether the government demonstrated that Derrick Souder was in fact "peculiarly" available to the defendants in light of our resolution of the self-incrimination question, we note the incomplete response of the district judge to the jury inquiry on the issue. Tr. 6–50; *cf.* Tr. 5–145 (district judge opined that he was "certainly" more available to the defendants).

## B. Sufficiency of the Evidence

■ The appellants' challenge to the sufficiency of the evidence requires only brief discussion.[5] Both Glenn and Souder contend that the evidence was legally insufficient to support their convictions of possession with intent to distribute. Glenn argues that possession of 1.694 grams of cocaine base could not establish intent to distribute in light of this court's recent holding in *United States v. Stephens,* 23 F.3d 553 (D.C.Cir.1994), that possession of 5.9 grams of cocaine base did not establish such intent. The two cases are readily distinguishable. In *Stephens,* no evidence other than the cocaine and $511 in cash was offered to establish intent to distribute. *See id.* at 555–56. The court expressly recognized, however, that "when combined with other evidence of distribution, a defendant's possession of a quantity of drugs only moderately greater than the amount typically possessed for personal use may add to the inference of intent to distribute." *Id.* at 557.

■ Here, the segregation of the cocaine found on Glenn into nine individual ziplock bags could reasonably have supported the jury's inference that Glenn intended to distribute it. *See United States v. Herron,* 567 F.2d 510, 513 (D.C.Cir.1977) (packaging "supportive of an intent to distribute"). Similarly, the government introduced evidence sufficient to support the inference that Souder, assuming he possessed the cocaine found in the upstairs bedroom,[6] intended to distribute it. The 24.7 grams at issue "significantly exceed[ed] that necessary for personal use" and could itself properly support an inference of intent to distribute. *Stephens,* 23 F.3d at 557–58 (citing *United States v. Robinson,* 870 F.2d 612, 613 (11th Cir.1989) (25.2 grams of cocaine "extremely large amount for a mere user to possess")). Moreover, the pager, which received over 4,000 calls in eight months, provided further evidence to support the charge.

## C. Expert Testimony

■ Glenn and Souder also challenge Stroud's expert testimony, arguing that he improperly opined on the defendants' intent in violation of Fed.R.Evid. 704(b). We need not address Souder's argument in light of our reversal of his conviction on a different ground. With regard to Glenn, we review for plain error because Glenn did not object to Stroud's testimony. Tr. 3–39. If the admission of Stroud's testimony was error, it was not plain error. "For such error to be plain ... it must (1) have been error under settled law of the Supreme Court or this circuit, and (2) have unfairly prejudiced the jury's deliberations." *United States v. Mitchell,* 996 F.2d 419, 422 (D.C.Cir.1993). Glenn meets neither test. The trial occurred long before the issuance of our opinion in *United States v. Boyd,* 55 F.3d 667 (D.C.Cir. 1995), where the opinion evidence adduced was almost identical to the evidence here and Boyd's conviction was reversed. Moreover, Glenn was not unfairly prejudiced in view of the possession evidence which, as previously

---

**5.** Souder also asserts that the prosecution improperly elicited inadmissible testimony and vouched for its witnesses at trial and that the district court improperly curtailed his closing argument. We need not consider these arguments in light of our reversal of his conviction on the basis of the missing witness instruction.

**6.** The record contains sufficient evidence, albeit barely so, to allow a jury reasonably to conclude that Gregory Souder possessed the cocaine base found in the upstairs bedroom. Although "[t]he inference that a person who occupies an apartment has dominion and control over its contents applies even when that person shares the premises with others," *United States v. Morris,* 977 F.2d 617, 620 (D.C.Cir.1992), we have also recognized that merely occupying a shared bedroom where contraband is found is insufficient to establish constructive possession of the contraband in the absence of other evidence supporting the inference of possession. *United States v. Thorne,* 997 F.2d 1504, 1510 (D.C.Cir.1993). Here there was supporting evidence. The pagers were in plain view and Sledge testified (although contradicted by other witnesses) that Souder moved from one bed to the other as Sledge approached Souder's bedroom, conduct a jury could reasonably believe to be an effort to distance himself from the contraband. "The fact that a defendant took evasive action in response to the presence of police can be considered in inferring constructive possession." *United States v. Hernandez,* 780 F.2d 113, 117 (D.C.Cir.1986); *compare United States v. Jenkins,* 981 F.2d 1281, 1284 (D.C.Cir. 1992) (insufficient evidence to infer constructive possession where defendant "made no attempt to dissociate himself from the [contraband] or to divert attention to it. In fact, he took the one step most likely to lead to its detection: he ran directly toward the car where it was located.").

discussed, was itself sufficient to support the jury's inference that he intended to distribute the drugs.

For the foregoing reasons, we affirm Glenn's conviction and reverse and remand Souder's case to the district court for further proceedings.

*So ordered.*