# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3204

_____

United States of America,               *
                                         *

         Plaintiff - Appellee,     *

                                         *

v.                               *   Appeal from the United States
                                       *   District Court for the

Bill Africanus Wesseh, also known as  *   District of Minnesota.
William Africanus Wesseh,        *

                                       *

         Defendants - Appellees.   *

_____

Submitted: May 13, 2008
Filed: July 7, 2008

_____

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

A jury convicted Bill Africanus Wesseh of one count of credit union robbery in violation of 18 U.S.C. § 2113(a) and (d) and the district court[1] sentenced him to 87 months imprisonment. Wesseh challenges the sufficiency of the evidence supporting his conviction. We affirm.

_____

[1]The Honorable Michael J. Davis, Chief Judge (as of July 1, 2008), United States District Court for the District of Minnesota.

On March 2, 2006, the Anoka Hennepin Credit Union (the credit union) in Champlin, Minnesota was robbed. The credit union was insured by the National Credit Union Administration at the time of the robbery. The robber, a lone male, entered the credit union, approached the teller station operated by Sarah Erickson, placed a handgun on the table pointed at Erickson, and said, "Give me all the money in the bottom drawer, bitch." Erickson took approximately $12,325 from the bottom drawer and placed it in a white bag which the robber had thrown at her. She later described him as being approximately 6' tall, in his twenties, and dark complected.

Denise Erickson, the teller working at the next station, was on the phone at the time of the robbery but also saw the firearm and described the robber as approximately 5'10", in his early twenties, and very dark complected. Both tellers described the robber as wearing all black clothing, including a black hooded sweatshirt, with a cloth covering part of his face. Manager Mark Hodowanic had a view of the incident from further away. He saw a gun in the robber's right hand as he was leaving, and described him as a dark complected black male in his late teens or early twenties between 5'10" and 6' tall.

After Sarah Erickson handed the money bag to the robber, he fled through the doors and ran over a hill behind the credit union. A canine unit was called to the scene and Officer Jason Majeski responded with his canine partner Rocky, who is trained to track crushed vegetation and fresh human scent although he is not scent specific and does not differentiate between human scents. Majeski and Rocky began their search just outside the doors of the credit union. Rocky tracked fresh human scent from there over the hill behind the credit union to an apartment complex approximately 1000 feet away. Along Rocky's route Majeski observed footprints in the snow going down the hill and through a parking lot to the same apartment complex. Although Rocky lost the scent briefly in the parking lot, he reacquired it and led Majeski to the second floor of the apartment complex, where he began circling, indicating that he had lost the scent. Majeski knocked on several doors on the second

and third floors but did not find a suspect. Although Sarah and Denise Erickson reported that they believed the robber had pushed open the credit union doors with his bare hand, fingerprints taken from the doors of the credit union did not match known prints, and no likely suspect was identified at that time.

There was another robbery of the credit union on April 3, 2006 and also an attempted robbery on May 11, 2006. On the day after the attempted robbery, Patrick Dorber, the lessor of unit 209 at the apartment complex the police had searched, received a call that rent had not been paid for his unit. When he went to the apartment, he found trespassers occupying it and called the police. Officer Brian Wentworth of the Champlin Police Department responded and found Wesseh and several other individuals in the apartment, including Donna Durga and Sam Mitchell. Officer Wentworth noticed a black and gray jacket on the floor which matched the description of the jacket worn during the attempted robbery on May 11. The next day Dorber contacted the police again to report a firearm he found in a container of flour while cleaning the kitchen in unit 209. Officer Heather Robinson responded and saw a handgun still inside the flour container; no fingerprints were recovered from it.

At trial Donna Durga testified that she and Wesseh had been living in unit 209 with Sam Mitchell and Mitchell's girlfriend Lashondra, and that Wesseh, Durga, and Mitchell had been selling marijuana out of the apartment. She testified that she had been at the apartment with Wesseh, Mitchell, Lashondra, and Durga's friend Lottie Lomax on March 2, 2006, the day of the first robbery at the credit union. Wesseh was wearing all black, including a black hooded sweatshirt, when he left the apartment with Mitchell. Approximately five minutes later, Wesseh ran back into the apartment out of breath and threw a plastic bag onto the floor in the middle of the living room. Wesseh asked where Mitchell had gone, expecting that he would be there waiting for him. Wesseh then said to Durga, "I'm sorry I crashed your car," and "I got you," which Durga understood to refer to a recent incident in which her car had been crashed by Wesseh and Mitchell while returning from a trip to Chicago to purchase

marijuana. Durga testified that Lashondra took the plastic bag to a nearby desk where she began removing stacks of money bound together with paper. Soon thereafter Mitchell returned to the apartment and gave Wesseh a hug. Then Durga heard dogs and police radios and saw that the parking lot was filled with police cars.

Lottie Lomax gave similar testimony. She related how Wesseh was wearing black pants and a black hooded sweatshirt when he ran into the apartment out of breath and threw a white plastic bag on the floor. Lomax left the room before seeing what was in the bag but observed that the contents had a greenish tint and a box like shape. Later that night Lomax and Durga drove Wesseh and Mitchell to the bus station because Wesseh wanted to leave town to escape police attention. Video surveillance from the bus station was admitted into evidence, and Durga identified herself, Wesseh, and Mitchell on the video. Bus company records show that two travelers including "Will Wessehl" bought tickets from Minneapolis to Chicago that day.

Wesseh returned from Chicago approximately one week after the March 2 robbery. He gave Durga some hundreds of dollars, and he told her that he had given Mitchell $5000 and used the rest of the money to buy over a pound of marijuana. Wesseh also told Durga how he had carried out the robbery, describing his route over the hill, his entry into the credit union with a gun, and his demand to the teller to put the money in the bag.

Durga had been at the apartment when police responded to Dorber's unwanted persons call on May 12, 2006. She testified that shortly before the officers entered, she observed Wesseh take a gun from his room and hide it in a pot of flour in the kitchen. Durga gave much of this information to officers on May 16, 2006, and Wesseh became a suspect in the March 2 robbery and the May 11 attempted robbery. His photograph was placed in a photo lineup, and teller Sarah Erickson identified him as the person who had robbed the credit union on March 2. At trial Erickson also

made an in court identification of Wesseh but was unable to pick him out of the lineup exhibit until after she was shown her signature on it.

At trial the government also called two informants, Sedric Bady and Ernest Baugh. Bady testified that he lived in the same apartment complex as Wesseh and had given him a ride to the store one evening. During the ride Wesseh told him that he had severely damaged a friend's car in Wisconsin and that police had seized marijuana from the wreckage. Bady identified Wesseh in court and in the surveillance photo of the robber as the person he had given a ride. Baugh testified that while the two were in jail Wesseh had asked for advice about his case, explaining that he had used a gun which he kept hidden in a barbeque grill or a "flower pot," and that he had run from the credit union to a nearby apartment where he had thrown the proceeds of the robbery on the floor.

At the close of the government's case Wesseh moved for a judgment of acquittal. The district court dismissed count 2 of the superseding indictment which charged Wesseh with the attempted robbery on May 11, 2006, but it denied the motion as to count 1 for the March 2 robbery. After the close of Wesseh's defense, the jury returned a guilty verdict. The district court then denied Wesseh's motion for acquittal and sentenced him to 87 months imprisonment.

Wesseh appeals, arguing that there was insufficient evidence to support his conviction for credit union robbery because there were no fingerprints, DNA, hair follicles, or other forensic evidence placing him at the scene of the crime and because the government's key witnesses were not credible. The government counters that direct evidence is unnecessary, that witness credibility is within the province of the jury, and that witnesses identified Wesseh as the robber in photo lineups and in court, and gave ample testimony to support his conviction.

We review de novo whether the evidence was sufficient to support Wesseh's conviction and draw all reasonable inferences in the light most favorable to the verdict. United States v. Igbokwe, 518 F.3d 550, 551 (8th Cir. 2008). We will not overturn a jury verdict unless "a reasonable jury could not have found all the elements of the offense beyond a reasonable doubt." United States v. Nambo-Barajas, 338 F.3d 956, 960 (8th Cir. 2003) (quotations omitted). Direct or circumstantial evidence can provide the basis for a conviction. E.g., United States v. Jiminez-Perez, 238 F.3d 970, 973 (8th Cir. 2001); see Hamling v. United States, 418 U.S. 87, 124 (1974).

A conviction under 18 U.S.C. § 2113 (a) and (d) requires proof beyond a reasonable doubt that a person took money from a credit union by force and violence or intimidation and deliberately jeopardized the life of another person by use of a dangerous weapon during the course of taking the money. After reviewing the record we are satisfied that the government's evidence was sufficient to sustain the jury's guilty verdict. Witness testimony described Wesseh's physical characteristics, placed him in the vicinity of the robbery, connected him to the firearm used in the robbery, and identified him as the robber in court and in a photo lineup. Although there was conflicting evidence about the appearance of the firearm used in the robbery, there was testimony that a black handgun had been used, that Wesseh had admitted to using a handgun while taking the money, and that Wesseh put a black handgun in a flour pot to hide it when he was aware that police were on their way to the apartment. See United States v. Haney, 23 F.3d 1413, 1417 (8th Cir. 1994) (testimony that defendant had been seen with gun sufficient to support conviction).

Wesseh's argument that the government witness testimony was insufficient to sustain the verdict because the witnesses were either convicted criminals, impeached, or otherwise incredible is unavailing. Assessing witness credibility is the job of the jury and absent extraordinary circumstances not present here, we will not review that assessment. See, e.g., United States v. Crenshaw, 359 F.3d 977, 988 (8th Cir. 2004); see also Holland v. United States, 348 U.S. 121, 140 (1954).

Viewing the evidence in the light most favorable to the government and resolving all conflicts in its favor, we conclude that the jury's finding that defendant was guilty of the armed credit union robbery on March 2 was sufficiently supported by the evidence.

For these reasons we affirm the judgment of the district court.

_____