# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1378

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| James Jones, | * | |
| | * | |
| Appellant. | * | |

_____

No. 09-1492

_____

Appeals from the United States
District Court for the
Eastern District of Missouri.

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Cornelius Raymond Johnson, | * |
| | * |
| Appellant. | * |

_____

Submitted: December 18, 2009
Filed: April 9, 2010

_____

Before RILEY,[1] Chief Judge, WOLLMAN and MELLOY, Circuit Judges.
_____

RILEY, Chief Judge.

A jury convicted James Jones (Jones) and Cornelius Raymond Johnson (Johnson) of possession with intent to distribute cocaine base. Jones and Johnson appeal their convictions, claiming the government presented insufficient evidence at trial to support the jury's verdicts. Johnson also contends the district court[2] erred in denying his Batson[3] jury selection challenge. We affirm.

## I. BACKGROUND

On June 12, 2008, a grand jury returned a two-count indictment against Jones and Johnson. Count I alleged Jones possessed with intent to distribute more than fifty grams of a mixture or substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Count II alleged Johnson possessed with intent to distribute more than five grams of a substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1). On November 12, 2008, the case proceeded to trial. The government presented testimony from six witnesses, including four police officers and a forensic chemist with the St. Louis Metropolitan Police Department. We summarize the relevant testimony.

Officer Blake Witzman (Officer Witzman) testified that in May 2008 he was working on a Community Response Team and his duties included investigations into drug activity. On the evening of May 14, 2008, Officer Witzman received

_____

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

[2]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

[3]Batson v. Kentucky, 476 U.S. 79 (1986).

information from a source that two individuals, "James" and "Cornelius," were selling narcotics in front of the residence located at 4570 Davison in St. Louis, Missouri. The source provided Officer Witzman with a physical description of the two men and described the method the men used to conduct the drug sales. The source stated the men were standing on the porch together, and while one man would stay on the porch as a lookout, the other would conduct drug transactions with individuals who drove on the street in front of the house.

Officer Witzman notified four other officers about the information he received, and the officers decided to meet two blocks east of 4570 Davison in an effort to remain covert. The officers parked their vehicles and continued on foot until they stopped behind a fence located across the street from the residence. Officer Witzman observed several vehicles stopped in front of the residence and at least ten individuals talking to the vehicles' occupants. Officer Witzman saw two individuals standing on the front porch who matched the description the source had provided. Officer Witzman recognized Johnson, whom he had seen around the neighborhood.

After approximately five minutes, Officer Witzman observed Johnson approach the passenger side of a vehicle and have a brief conversation with the occupants. Johnson then walked to the passenger side of a second vehicle and leaned inside before returning to the porch. A short time later, Officer Witzman saw Jones approach a dark colored Impala and lean into its driver side window. Officer Witzman testified the driver extended his arm and handed Jones several plastic baggies containing large chunks. When Jones took the plastic baggies, someone in the vicinity yelled, "Police," and the individuals in front of the residence scattered. Jones took the plastic baggies, folded them inside his shirt, and ran toward the porch.

Officer Witzman testified Johnson, who was standing on the porch, ran into the 4570 Davison residence, and Jones followed Johnson inside. Officer Witzman and Officer Damon Willis (Officer Willis) pursued Johnson and Jones inside the

residence. Officer Witzman followed Jones into a bathroom and observed Jones lean over a toilet, open his shirt, and discard the baggies into the toilet. Officer Witzman ordered Jones to lie down on the ground and place his hands behind his back, and Jones complied. Officer Witzman secured Jones, retrieved four baggies from the toilet, and packaged them in an evidence envelope. Officer Witzman testified the baggies contained a distribution amount of crack cocaine.

Officer Willis testified he helped Officer Witzman conduct surveillance of the Davison residence and recited testimony similar to that given by Officer Witzman. Officer Willis further testified that as Officer Witzman followed Jones into the bathroom, Officer Willis pursued Johnson, who was attempting to exit the back door of the residence. Officer Willis ordered Johnson to get down on the ground and then took Johnson into custody. Officer Willis conducted a pat down of Johnson and retrieved several clear plastic bags containing pieces of a rock-like substance, which was later determined to be crack cocaine. Officer Willis testified the amount of crack cocaine he retrieved from Johnson appeared to be a distribution amount, and the packaging of the cocaine was a common method of transfer from seller to buyer.

Lashaun Kegler (Kegler) was a resident of 4570 Davison on May 14, 2008. Kegler testified she was inside her home when two men ran into her home, followed by the police. Kegler stated she had not invited the men into her home on that day or on any other occasion.

Margart Owens (Owens), a forensic chemist with the St. Louis Police Department Crime Laboratory, testified she analyzed the items police seized from Johnson and Jones. Owens determined the substance taken from Johnson was cocaine base with a gross weight of 6.58 grams. Owens reported the substance taken from Jones consisted of cocaine base with a gross weight of 234.98 grams.

On November 17, 2008, a jury found Jones and Johnson guilty of possession with intent to distribute cocaine base as charged in the superseding indictment. The district court sentenced Jones to 240 months imprisonment, and Johnson to 120 months imprisonment. Jones and Johnson appeal, claiming the government failed to present sufficient evidence at trial to sustain their convictions. Johnson also argues the district court erred in denying Johnson's Batson challenge.

## II.     DISCUSSION
### A.     Sufficiency of the Evidence

Jones and Johnson contend the district court should have granted their motions for judgment of acquittal because there was insufficient evidence to support the jury's verdicts. "'We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict.'" United States v. Hernandez, 569 F.3d 893, 896 (8th Cir. 2009) (quoting United States v. Bower, 484 F.3d 1021, 1025 (8th Cir. 2007)), cert. denied, 130 S. Ct. 1308 (2010). "'[W]e will uphold the verdict if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt.'" United States v. Nolen, 536 F.3d 834, 842 (8th Cir. 2008) (quoting United States v. Cole, 525 F.3d 656, 661 (8th Cir. 2008)).

#### 1.     Johnson's Argument

Johnson argues Officer Willis, Officer Witzman, and Kegler "provided unreasonable testimony that clearly does not support conviction on the charge set out in the indictment." Johnson claims that on May 14, 2008, he was a visitor at 4570 Davison when "he heard a commotion and the police ordered everyone to get on the floor." Johnson maintains Officer Witzman had "harassed" Johnson in the past, and during the May 14, 2008 encounter, Officer Witzman "tried to coerce [Johnson] into divulging information about firearms crimes." Johnson alleges, when he failed to

provide such information, the officers charged him with possession of cocaine base with intent to distribute.

Johnson implies Officer Witzman's and Officer Willis's testimony that "they could see clearly activity occurring more than 150 [feet] away," is unreasonable. Johnson theorizes the officers could not have concluded Johnson was distributing cocaine base because the officers could not hear Johnson's conversation or see "exchanges of any kind." Johnson also insists it is inexplicable how the officers could "cover the distance" from the officers' surveillance position to the 4570 Davison residence before Johnson "could jump off the porch and runaway [sic]," or Jones could hide or flush the cocaine base Jones allegedly possessed. Johnson further contends Kegler's testimony that Johnson had never been in Kegler's house is unreasonable because Johnson was able to render an "exact layout" of the interior of her home.

Johnson is essentially challenging the credibility of the witnesses. "Assessing witness credibility is the job of the jury and absent extraordinary circumstances . . . , we will not review that assessment." United States v. Wesseh, 531 F.3d 633, 637 (8th Cir. 2008); see also United States v. Johnson, 519 F.3d 816, 822 (8th Cir.) (noting "the jury's credibility determinations are 'virtually unreviewable on appeal'" (quoting United States v. Singh, 494 F.3d 653, 660 (8th Cir. 2007))), cert. denied, 129 S. Ct. 199 (2008). Johnson's counsel had an opportunity to attack the credibility of the government's witnesses at trial, and the jury nevertheless accepted the witnesses' testimony as true. See United States v. Hill, 249 F.3d 707, 714 (8th Cir. 2001). Upon a thorough review of the record, we find no basis upon which to disturb the jury's credibility findings.

### 2. Jones's Argument

Jones acknowledges Officer Witzman testified he observed Jones discard several small baggies containing cocaine base into a toilet; however, Jones contends

this evidence is insufficient to demonstrate Jones intended to distribute the cocaine base. We disagree. To establish the offense of distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1), the government is required to establish the defendant (1) "knowingly and intentionally distributed a controlled substance," and (2) "knew the item was a controlled substance at the time of distribution." Hernandez, 569 F.3d at 896; see also United States v. Boyd, 180 F.3d 967, 979 (8th Cir. 1999).

"An intent to distribute contraband may be established with circumstantial evidence," United States v. Ojeda, 23 F.3d 1473, 1476 (8th Cir. 1994), "including such things, as quantity, purity, and presence of firearms, cash, packaging material, or other distribution paraphernalia," United States v. Lopez, 42 F.3d 463, 467 (8th Cir. 1994). In fact, "'[i]ntent to distribute may be inferred solely from the possession of large quantities of narcotics.'" Boyd, 180 F.3d at 980 (quoting Ojeda, 23 F.3d at 1476). "'The underlying theme of such cases is that defendant possessed a quantity which was more than he would possess for his own use.'" Id. (quoting Lopez, 42 F.3d at 467).

In this case, Officer Witzman testified he seized 234.98 grams of a substance containing cocaine base from a toilet where Jones had deposited it. Officer Witzman testified such a large quantity of cocaine base constituted a distribution amount. This alone would be sufficient circumstantial evidence for the jury to conclude Jones possessed with intent to distribute the cocaine base. See id.

Viewing the record in the light most favorable to the government, there is substantial evidence to support the jury's verdict. The district court did not err in denying Jones's and Johnson's motions for judgment of acquittal.

**B.    Batson Challenge**

During voir dire, the government used peremptory challenges to excuse three African-Americans from the venire.  Johnson raised a Batson objection, noting the government excused three of the four remaining African-Americans on the panel. The district court found Johnson and Jones demonstrated a prima facie case of racial discrimination because the government used three of its six peremptory challenges to excuse African-Americans from the venire panel, creating a pattern.  The district court then provided the government with an opportunity to provide a race-neutral explanation for the peremptory challenges.

The government stated it exercised a peremptory challenge to strike Juror Number 8 because the juror has a sister-in-law who works as a correctional officer in the county jail, and correctional officers "are constantly under investigation by FBI, by city police and other law enforcement for the importation of controlled substances into the institution."  The government justified its peremptory challenges as to Juror Number 30 and Juror Number 39, stating both jurors adamantly indicated, in answer to the court's question, a belief that African-Americans are treated unfairly in the criminal justice system.[4]  The government added that it used a peremptory challenge to excuse Juror Number 20, a Caucasian female, for the same reason.

The district court considered the reasons proffered by the government and found the government had provided a race-neutral explanation for excusing Juror Number 30 and Juror Number 39, and Johnson failed to show purposeful discrimination.  As to Juror Number 8, the district court stated the government's justification for using a peremptory challenge was "tenuous, tangential, and extremely fashioned," but found the government provided a race-neutral explanation.  The district court then found Johnson failed to show purposeful discrimination and denied Johnson's Batson challenge.

---

[4]The government had earlier attempted to strike Juror Number 30 and Juror Number 39 for cause, citing the same reasons.

In Batson v. Kentucky, 476 U.S. 79, 84 (1986), the Supreme Court reaffirmed "it is a violation of the Equal Protection Clause for the government to use a peremptory challenge to strike a prospective juror solely on the basis of race." United States v. Bolden, 545 F.3d 609, 613 (8th Cir. 2008), cert. denied, 130 S. Ct. 796 (2009). Courts considering a Batson challenge apply a three-step analysis: (1) the defendant must make a prima facie showing that the government issued a peremptory challenge on the basis of race, (2) the government must offer a race-neutral reason for the strike, and (3) the court must determine whether the defendant has shown purposeful discrimination. See Snyder v. Louisiana, 552 U.S. 472, 476-77, 128 S. Ct. 1203, 1207 (2008). "On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." Id.

In the present case, the district court followed the three-step process Batson requires. The district court found, based upon a pattern, that Johnson made a prima facie showing the government issued peremptory challenges on the basis of race. The district court then gave the government an opportunity to provide a race-neutral justification. After the government provided its reasons for the strike, the district court found the government's reasons were race-neutral and no Batson violation occurred.

A district court's denial of a Batson challenge should be upheld when the government's reasons for the strikes are nondiscriminatory, even when those reasons may not support striking a juror for cause. See United States v. McKay, 431 F.3d 1085, 1092 (8th Cir. 2005). Further, "[i]f there is no inherently discriminatory intent in the prosecutor's explanation, 'the reason offered will be deemed race neutral.'" United States v. Roebke, 333 F.3d 911, 913 (8th Cir. 2003) (quoting Purkett v. Elem, 514 U.S. 765, 768 (1995)). The district judge is directly immersed in the trial with a much better perspective than ours to determine whether purposeful discrimination exists, and we typically defer to that determination. After careful review of the record

and the government's stated reasons for exercising its peremptory challenges, we conclude the district court did not clearly err in finding the government provided a race-neutral justification for its strikes or in holding Johnson failed to prove purposeful discrimination.

## III.    CONCLUSION

We affirm the judgment of the district court.

_____