# United States Court of Appeals

### For the Eighth Circuit

———————————————

No. 24-1778

———————————————

United States of America

*Plaintiff - Appellee*

v.

William Loydellton Speed, Jr., also known as Mikey, also known as William Lloydellton Speed, Jr., also known as William Loydellerton Speed

*Defendant - Appellant*

————————

Appeal from United States District Court
for the Southern District of Iowa

————————

Submitted: March 21, 2025
Filed: August 18, 2025
[Unpublished]

————————

Before COLLOTON, Chief Judge, ERICKSON and GRASZ, Circuit Judges.

————————

PER CURIAM.

Following a bench trial, the district court[1] found William Speed, Jr., guilty of conspiracy to distribute five grams or more of methamphetamine and distribution of

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

five grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1), 846, and 851. On appeal, Speed challenges the sufficiency of the evidence for his convictions and the application of the career offender enhancement. We affirm.

## I. Background

On March 4, 2022, a confidential informant (CI) met Leroy Williams at an apartment for a pre-arranged controlled buy of methamphetamine. Speed and Ashley Young were also present in the apartment. Eventually, the group left the apartment and got in the CI's vehicle, with the CI and Williams in the front seats and Speed and Young in the back seats. While in the vehicle, Williams asked the CI how much methamphetamine he wanted, and the CI stated he wanted a half pound. Williams then asked Speed if he had two ounces of methamphetamine with him and directed Speed to give the two ounces to the CI. Speed left the vehicle and returned, carrying a duffel bag. According to the CI, Speed handed the methamphetamine to Williams. Later on, Speed left the vehicle, and the CI and Williams drove to a gas station, hoping to obtain a scale to weigh the methamphetamine. Speed separately joined them at the gas station and received $800 from the CI for the drugs. Subsequent laboratory testing revealed the substance obtained by the CI contained approximately forty-four grams of methamphetamine.

A grand jury indicted Speed on two counts: conspiracy to distribute five or more grams of methamphetamine and distribution of five grams or more of methamphetamine. Speed waived his rights to counsel and to a jury trial. At the bench trial, the district court heard testimony from various government agents, the CI, and Young. While the CI stated that Speed gave the methamphetamine to Williams, Young claimed she thought the video recording of the controlled buy showed her handing something to Williams. Speed moved for a judgment of acquittal, but the district court denied his motion and found him guilty on both counts. At sentencing, the district court concluded Speed was subject to the career offender enhancement under the United States Sentencing Guidelines Manual

(Guidelines) because of his two prior felony drug crime convictions for violating Iowa Code § 124.401. After calculating his advisory Guidelines range as 360 months to life, the district court imposed a downward variance sentence of 264 months of imprisonment on both counts, running concurrently. On appeal, Speed challenges the sufficiency of the evidence for his convictions and the application of the career offender enhancement.

## II. Analysis

Beginning with Speed's challenge to the sufficiency of the evidence, we conclude a reasonable jury could find him guilty on both counts. "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Golden*, 44 F.4th 1129, 1132 (8th Cir. 2022) (quoting *United States v. Acosta*, 619 F.3d 956, 960 (8th Cir. 2010)). "We apply the same standard after a bench trial as after a jury verdict and reverse 'only upon a demonstration that a rational jury would have had no choice but reasonably to doubt the existence of an element of a charged crime.'" *Id.* (quoting *Acosta*, 619 F.3d at 960).

For the distribution count, the government needed to prove Speed "(1) knowingly and intentionally distributed [five grams or more of methamphetamine], and (2) knew the item was a controlled substance at the time of distribution." *United States v. Jones*, 600 F.3d 985, 990 (8th Cir. 2010) (quotation omitted). As for the conspiracy count, the government needed to prove: "(1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *United States v. Conway*, 754 F.3d 580, 587 (8th Cir. 2014) (quoting *United States v. Slagg*, 651 F.3d 832, 840 (8th Cir. 2011)). The government provided ample evidence to support both convictions. The CI went to Williams to buy methamphetamine. Williams then asked Speed if he had two ounces of methamphetamine and directed Speed to provide the CI with that amount. The CI

testified that Speed subsequently gave the methamphetamine to Williams to give to the CI, and the CI later paid Speed $800 for the methamphetamine. Laboratory testing revealed the substance contained about forty-four grams of methamphetamine. Based on these facts, a reasonable jury could conclude Speed knowingly distributed more than five grams of methamphetamine to the CI. Likewise, a rational jury could conclude Speed knowingly and intentionally entered into an agreement with Williams to distribute methamphetamine to the CI.

Speed's arguments to the contrary are unavailing. Speed asserts he could not be found guilty because Young claimed that she had provided the drugs to Williams. However, the district court rejected Young's testimony because she was "combative, evasive, and lacking candor." As we have repeatedly emphasized, "[a]ssessing witness credibility is the job of the [factfinder] and absent extraordinary circumstances, we will not review that assessment." *Jones*, 600 F.3d at 900 (cleaned up) (quoting *United States v. Wesseh*, 531 F.3d 633, 637 (8th Cir. 2008)). We have no basis to disturb the district court's credibility determination here. As the district court explained, Young's testimony that she provided the methamphetamine was inconsistent with other evidence, such as Speed leaving and returning to the vehicle after Williams asked if he had two ounces of methamphetamine. Moreover, Speed separately travelled to the gas station where he was paid for the drugs. Speed also claims there could not be an indictable conspiracy between him and a government informant. *See United States v. Nelson*, 165 F.3d 1180, 1184 (8th Cir. 1999) ("It is well settled that there can be no indictable conspiracy involving only the defendant and government agents and informers."). But here, the government's evidence showed Speed agreed with Williams, who was not a government agent or informant, to distribute methamphetamine to the CI. Speed provided Williams with the drugs the CI sought to purchase and received payment for those drugs.

Finally, Speed challenges the application of the career offender enhancement, arguing one of his prior Iowa convictions does not qualify as a controlled substance offense under U.S.S.G. § 4B1.2(b) because Iowa Code § 124.401 includes acts involving simulated controlled substances while the Guidelines' definition does not.

As Speed acknowledges, this argument is squarely foreclosed by binding precedent. *See United States v. Castellanos Muratella*, 956 F.3d 541, 543–44 (8th Cir. 2020) (concluding Iowa Code § 124.401 "is no broader than U.S.S.G. § 4B1.2"). Thus, we conclude the district court did not err by applying the career offender enhancement.

### III. Conclusion

We affirm the judgment of the district court.

_____